No. 82-32

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

THURMAN J. MUSGROVE,

Defendant,

vs.

INTERNATIONAL FIDELITY INSURANCE
COMPANY,  BONDING COMPANY,

Petitioner and Appellant.

Appeal from:   District Court of the Fourth Judicial District,
In and for the County of Mineral
Honorable Douglas Harkin, Judge presiding.

Counsel of Record:

For Appellant:

C. J. Tornabene argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Sarah Powers argued, Assistant Attorney General,
Helena, Montana
M. Shaun Donovan, County Attorney, Superior, Montana

Submitted:   November 26, 1982

Decided:   December 29, 1982

Filed: DEC 29 1982

<span>Thomas J. Kearney</span>
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals a Mineral County judgment finding him guilty, for a second time, of mitigated deliberate homicide. The judgment in this case arises from a retrial this Court ordered in State v. Musgrove (1978), 178 Mont. 162, 582 P.2d 1246.

This time, defendant presents four issues to this Court. First, defendant contends the District Court erred by discussing issues of the case with prospective jurors, in the absence of defendant and his counsel, without recording the discussion. Second, defendant argues the trial court erred by allowing references to defendant's prior trial. Third, defendant contends the trial court erred by admitting evidence of a crime defendant was not charged with. Fourth, defendant claims the trial court violated his rights to due process by giving the jury the following instruction: "The law also presumes that a person intends the ordinary consequences of any voluntary act committed by him." We need only analyze the fourth issue, and because we find error, we must reverse and remand for a new trial. In view of our reversal in this case, comment will also be directed to issues two and three.

The instruction complained of was jury instruction number seven; in full it states:

> "In every crime or public offense the State must establish each element described by the statute defining the offense and the State must further establish that the Defendant acted while having the mental state required by the statute defining the offense.

> "In this action the statute requires that the Defendant performed the acts knowingly or purposely. A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. When knowledge of the existence of a particular fact is an element of the offense, such knowledge is established if a person is aware of a high probability of its existence.

> "A person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause

- 2 -

that result. When a particular purpose is an element of an offense the element is established, although such purpose is conditional unless the condition negates the harm or evil sought to be prevented by the law defining the offense.

"Any required mental state need not be proved by direct evidence but may be inferred from acts, conduct and circumstances appearing in the evidence. The law also presumes that a person intends the ordinary consequences of any voluntary act committed by him. This presumption, however, is termed a disputable presumption and may be controverted by other evidence." (Emphasis added.)

The underlined portion, which may be referred to as the "Sandstrom instruction," is the focus of appellant's argument. Appellant contends the giving of that portion of instruction number seven is clearly reversible error in view of the United States Supreme Court's holding in Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. In that case, the United States Supreme Court struck down as unconstitutional an instruction almost identical to the language emphasized above "[b]ecause David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden shifting presumption . . . or a conclusive presumption . . . ." 422 U.S. at 524.

On remand to this Court, the question was "whether the erroneous instruction constituted harmless error as against the defendant." State v. Sandstrom (1979), ____ Mont. ____, ____, 603 P.2d 244, 245, 36 St.Rep. 2099, 2100. We found reversible error. We reversed because "[t]he erroneous instruction [went] to a vital element of the proof of the crime, namely the intent of the defendant Sandstrom in committing the homicide. If the jury followed the instruction, it could have presumed the intent without proof beyond a reasonable doubt." ____ Mont. at ____, 603 P.2d at 245, 36 St.Rep. at 2101. In the case now before us, the question is the same, was the giving of the instruction harmless error? We must answer in the negative.

In this case, as in Sandstrom, the instruction obviously permitted the jury to presume intent without proof beyond a reason-

able doubt. The defendant's intent was a hotly contested issue of fact in the case and intent is an important element of the crime the State charged. Because of the instruction, the jury could disregard the defendant's testimony that he intended only to fire a warning shot; then with the presumption of intent, the jury could have concluded that the defendant used deadly force to intentionally kill the victim. Therefore, because of the Sandstrom instruction, the State could obtain a conviction without having to introduce any evidence of the defendant's intent.

Respondent argues that the issue here was not intent but justification in the use of force by the defendant, and since intent was not an issue, the giving of the Sandstrom instruction was harmless error. Respondent cites State v. Sunday (1980), _____ Mont. _____, 609 P.2d 1188, 37 St.Rep. 561, to support its argument. In Sunday the jury was given the Sandstrom instruction; "the law presumes that a person intends the ordinary consequences of his voluntary acts." We found the giving of the instruction to be, at most, harmless error. Such was our holding because by Sunday's own admission, his object was "to shoot the McLeans or to cause that result." Consequently, it was never an issue whether Sunday purposely or knowingly shot the victims. In other words, overwhelming evidence established the presumption of the Sandstrom instruction. Sunday's jury did not have to presume that he intended the ordinary consequences of his voluntary acts; that he shot at the McLeans intending to kill or seriously injure. Sunday admitted that. The only issue was whether or not the shooting was done in self defense.

This case is distinguishable from Sunday. Here, the defendant testified that he only intended to fire a warning shot. However, the Sandstrom instruction allowed the jury to presume that because Musgrove pulled the trigger, he intended to kill the victim.

The respondent also argues that the instruction was per-

missive in nature rather than mandatory; consequently, the principles of Sandstrom were not violated. We have recognized this distinction in State v. Bad Horse (1980), _____ Mont. _____, 605 P.2d 1113, 37 St.Rep. 45, and State v. Coleman (1979), _____ Mont. _____, 605 P.2d 1051, 36 St.Rep. 2237. However, in this case, after a reading of all of the jury instructions, especially the full text of instruction no. 7, we cannot be certain beyond a reasonable doubt that members of the jury did not misconstrue the instruction. As the United States Supreme Court stated in Sandstrom v. Montana:

> "We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion-shifting effect means that we cannot discount the possibility . . ." 442 U.S. at 519.

Accordingly, we must reverse.

The matter of references to previous trials should not occur if the trial court follows our recommendation that a change of venue take place. However, in regard to this issue, our statute, section 46-16-701, MCA, provides: "a 'new trial' is a reexamination of the issue in the same court before another jury after a verdict or a finding has been rendered. The granting of a new trial places the parties in the same position as if there had been no trial."

Appellant contends that this statute compels an automatic reversal if anyone (other than defendant or his witnesses) mentions that there has been another trial. We decline to so strictly construe this statute. We can envision many situations where it may be necessary to mention the fact there has been another trial. We direct the trial court and counsel for the State and defense to carefully guard the record to see that none of the parties involved lose or gain any rights because of the result of the previous trial. The fair trial issue must predominate in the new trial.

Concerning issue three, the fact that the appellant did not have a gun permit, we note that this issue was created by the opening argument of appellant's counsel and suggest that on retrial the court admonish counsel not to repeat this argument. If counsel, on retrial, argues appellants right to carry a loaded pistol, then the State may counter as it did in this trial.

Finally, we direct the District Court grant a change of venue for retrial in this case. In Montana, the rule pertaining to a change of venue is:

> ". . . an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial."

State v. Austad (1982), _____ Mont. _____, _____, 641 P.2d 1373, 1381, 39 St.Rep. 356, 364; State v. Link (1981), _____ Mont. _____, 640 P.2d 366, 38 St.Rep. 982. In looking at the record, and the characteristics of Mineral County, we think there are a number of reasons to support a change of venue in this case. First, it is obvious that Mineral County is a very small county containing only about 993 residents. This alone substantially increases the probability that publicity concerning the case could be pervasive in the county and affect the opinions of potential jurors. As a stronger reason, however, we note that there have already been two trials in this county. Each of these trials were hotly contested and attended by many residents of the county. Consequently, the possibility that the results and content of the prior trials have been widely disseminated is much higher than if no previous trials had occurred. Therefore, the criteria for a change of venue articulated in Link and Austad are to be fulfilled.

Reversed.

_____
Justice

- 6 -

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice Daniel J. Shea, specially concurring:

I join the majority in ruling that defendant is entitled to a new trial because the unconstitutional Sandstrom instruction was given.

Although the first issue--discussion of the case by the District Court with prospective jurors in the absence of defendant and his counsel--need not be decided, for future guidance, this Court should have provided a detailed analysis of what happened and why the procedure should be condemned. And the same is true of the second issue--defendant's contention that he was prejudiced by references to his first trial. This Court should have set forth some guidelines in an effort to eliminate potential prejudice arising from mentioning that a defendant is being tried for a second or even third time. On the third issue, I agree with the Court that defendant opened the door by defense counsel's statement in the opening statement and therefore no prejudice occurred because the State went into the concealed weapon issue during its case in chief.

_Daniel J. Shea_
Justice

8