No. 90-162

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

KERMIT MEDICINE CLOUD KAO,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Benjamin R. Anciaux, Esq., Polson, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General; Jennifer
Anders, Assistant Attorney General; Helena, Montana

          Larry J. Nistler, County Attorney, Polson, Montana

Submitted on Briefs:  September 6, 1990

Decided:  November 8, 1990

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Kermit Medicine Cloud Kao appeals his felony conviction of incest, following a jury trial in the Twentieth Judicial District, Lake County. We affirm.

Kao raises the following issues:

1. Did the District Court err in allowing hearsay testimony from two witnesses?

2. Did sufficient evidence exist in the record to support a guilty verdict?

3. Did the District Court improperly allow evidence of Kao's prior crimes, wrongs, or acts?

4. Did the District Court improperly exclude certain evidence offered by Kao?

5. Did the District Court deny Kao a fair trial under the doctrine of cumulative error?

Kermit Medicine Cloud Kao married Frances Medicine Cloud Kao on March 3, 1983. At the time of their marriage, Frances had a five-year-old daughter, E.M. E.M. lived with her natural father, Tim Morris, in Helena, but through the years, she visited the Kaos in Missoula and later lived with the Kaos in Turtle Lake.

While living at the Kao residence in Turtle Lake, eleven-year-old E.M. ran away from home on two separate occasions, once around February 21, 1989 and once on March 11, 1989. Following the first run-away incident, the Lake County Sheriff's Office referred E.M. to the Lake County Department of Family Services

(DFS). During a counseling session with Linda Noble of DFS, E.M. disclosed that she had been sexually abused by her stepfather, Kao. E.M. also told her mother, Frances, of the abuse incident.

Linda Noble promptly notified the Lake County Sheriff's Office of the abuse incident; the Sheriff's Office, in turn, interviewed E.M. In a statement made to Officer Paula Gill on March 6, 1989, E.M. stated that Kao had touched her vaginal area during Christmas vacation in 1985 when the Kaos lived in Missoula. E.M. was eight years old at that time.

Meanwhile, Frances wrote a letter to Kao, who was then serving a sentence for an unrelated matter in Montana State Prison. In her letter, Frances told Kao that E.M. had recently run away from home on two occasions and that E.M. was being difficult to manage. Frances, however, did not mention any allegations of sexual abuse.

Kao immediately responded to Frances' concerns in a letter dated March 14, 1989. Kao's letter, in relevant part, stated:

> The problems you are having with [E.M.] extend from me. She may have already been messed up, but I did not help matters at all. I turned it into a very sinful deed. It started in Missoula. I touched her intimately and I told her not to tell. That is why I was so mean with her, to scare her so she wouldn't tell. Then this last time, at Turtle Lake, I knew it was wrong and I tried to ignor [sic] her. I tried really hard, and I almost made it. But I touched her again, just a quick feel, and I knew I was lost. It happened and I really felt dirty. I wanted to tell you, but the fact is I didn't and because I didn't I may have destroyed everything. Poor [E.M.], I am so sorry. Frances, I am sorry! And it comes from my heart. I do still have one.

On May 24, 1989, Kao was charged by information with one count of incest. At his one-day trial on November 20, 1989, Kao testified that he did not sexually abuse E.M.--he stated otherwise in his letter only to get E.M. removed from Frances' residence so his two natural children, who also reside with Frances, would no longer be exposed to the troubled E.M. E.M. could not testify as she was undergoing inpatient psychiatric therapy at Rivendell Center in Butte at the time of the trial.

The jury found Kao guilty of incest as charged. On December 15, 1989, the District Court sentenced Kao to ten years imprisonment for the charge of incest and ten years imprisonment for being a persistent felony offender, both sentences to run consecutively. The court also ordered Kao to complete the sexual offender treatment program and designated him a dangerous offender for parole purposes. From this conviction, Kao appeals.


1. Did the District Court err in allowing hearsay testimony from two witnesses?

The District Court allowed Linda Noble of DFS and Lake County Officer Paula Gill to testify from their personal knowledge regarding 1) E.M.'s unavailability to testify, and, 2) the time-frame of E.M.'s charges as E.M. stated to them. The District Court restricted their testimony to these two areas, and stated that any specific details of the alleged crime which E.M. related to Noble and Gill would not be allowed into evidence. Kao argues that their

4

testimony, however limited, was still hearsay, and unexcepted by Montana Rule of Evidence 804(b)(5) because the court failed to make certain preliminary findings under State v. J.C.E. (1988), 235 Mont. 264, 767 P.2d 309.

We see no error in the District Court's ruling, but any possible error is harmless; Kao's conviction will stand based on his admission in his letter as discussed below.


2. Did sufficient evidence exist in the record to support a guilty verdict?

The test for determining sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; restated in State v. Wilson (Mont. 1981), 631 P.2d 1273, 1278-79, State v. Geyman (1986), 224 Mont. 194, 195-96, 729 P.2d 475, 476, and State v. Gilpin (1988), 232 Mont. 56, 68, 756 P.2d 445, 451. Kao argues that if this Court strikes the testimony of Noble and Gill, then the evidence in the record would be insufficient to support a guilty verdict. We disagree. Even if the testimony of Noble and Gill were stricken from the record, Kao's letter independently establishes that Kao committed the crime of incest beyond a reasonable doubt.

5

Section 45-5-507, MCA, provides, in part, that a person commits the crime of incest when that person knowingly has sexual contact with a stepchild. Section 45-2-101(60), MCA, defines sexual contact as:

> any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party.

This Court has liberally construed what constitutes "touching of the sexual or other intimate parts of the person." See State v. Gilpin (1988), 232 Mont. 56, 68-69, 756 P.2d 445, 452 (rubbing buttocks and inner thigh); State v. Howie (1987), 228 Mont. 497, 503, 744 P.2d 156, 159 (rubbing belly and between legs); State v. Weese (1980), 189 Mont. 464, 467-68, 616 P.2d 371, 374 (rubbing belly and chest of prepubescent girl).

Here, Kao's admission in his letter clearly satisfies the elements of incest:

> It started in Missoula. I touched her intimately and I told her not to tell. That is why I was so mean with her, to scare her so she wouldn't tell. Then this last time, at Turtle Lake, I knew it was wrong and I tried to ignor [sic] her. I tried really hard, and I almost made it. But I touched her again, just a quick feel, and I knew I was lost. It happened and I really felt dirty.

Although Kao, in his letter, excludes what part of E.M.'s body he intimately touched, this exclusion does not negate Kao's admission that his touching was intimate. This letter alone is sufficient

6

to satisfy, beyond a reasonable doubt, that Kao knowingly had sexual contact with E.M, and thereby is guilty of incest.

3. Did the District Court improperly allow evidence of Kao's prior crimes, wrongs, or acts?

Montana Rule of Evidence 404(b) provides, in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Kao argues that the District Court erred when it allowed into evidence the fact that Kao was in prison in March, 1989, when he wrote the letter to his wife, which stated that he intimately touched E.M. Kao further argues that this "other crimes" evidence violated the notice requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957. Kao's imprisonment was mentioned by the State three times at trial: during opening statement, during direct examination of Frances, and during closing argument. However, Kao's underlying offense for his imprisonment was never mentioned.

Kao's argument is without merit, procedurally and substantively. Procedurally, Kao waived appellate review of this issue because he failed to timely object to the admittance of this fact when it was mentioned during the various times at trial. See §§ 46-20-104 and -701, MCA; State v. Kills on Top (Mont. 1990), 793 P.2d

1273, 1299, 47 St.Rep. 984, 1012; State v. Ungaretti (1989), 239 Mont. 314, 319, 779 P.2d 923, 926.

Furthermore, Kao's argument lacks substantive merit as the fact that Kao was in prison when he wrote the letter was not introduced to prove the character of Kao "in order to show that he acted in conformity therewith" under Montana Rule of Evidence 404(b). Rather, the evidence was submitted during the direct examination of Frances to establish the authenticity of Kao's letter. And the references to Kao's imprisonment during the State's opening and closing statements were insignificant and did not prejudice Kao in light of the entire record. We therefore hold that the District Court properly allowed the fact that Kao was in prison when he wrote his letter admitting he intimately touched E.M.

4. Did the District Court improperly exclude certain evidence offered by Kao?

During trial, Kao testified that he was aware that Tim Morris, E.M.'s natural father, had sexually abused E.M. The State informed the court that any reference to sexual abuse by Morris was prohibited by § 45-5-511(4), MCA. The District Court thereby ordered Kao's testimony stricken from the record and instructed the jury to disregard it.

Section 45-5-511(4), MCA, provides:

No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except:

(a) evidence of the victim's past sexual conduct with the offender;

(b) evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

Kao argues that this evidence should have been admitted to establish that E.M.'s problems stemmed from additional sources besides Kao. Kao's argument lacks merit and is a clumsy attempt to reduce his own culpability by casting blame on another. Clearly, § 45-5-511(4), MCA, provides no exception to warrant the admittance of this evidence to establish that another person had sexually abused E.M.

Kao further argues that this evidence is admissible under Montana Rule of Evidence 404(a)(2), which allows "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused. . . ." Kao argues that this evidence establishes that E.M. had the pertinent character trait of accusing others of sexually abusing her. Kao's assertion is unfounded and runs contrary to the intent of § 45-5-511(4), MCA, which prohibits evidence regarding E.M.'s sexual conduct.

Lastly, Kao argues that this evidence is admissible under Montana Rule of Evidence 404(b), the "other crimes" exception. Again, Kao's argument lacks merit as the "other crimes" involved

9

allege sexual conduct, which again, is specifically prohibited by § 45-5-511(4).

5. Did the District Court deny Kao a fair trial under the doctrine of cumulative error?

"The doctrine of cumulative error 'refers to a number of errors which prejudice defendant's right to a fair trial.'" State v. Ottwell (1989), 239 Mont. 150, 157, 779 P.2d 500, 504 (citations omitted). Kao asserts that the District Court cumulatively erred by 1) allowing the fact that Kao was incarcerated when he wrote his letter admitting that he intimately touched E.M., 2) disallowing Kao's testimony regarding alleged sexual abuse of E.M. by Tim Morris, and, 3) not dismissing the charges against Kao following the State's case-in-chief or following Kao's case-in-chief. Because we have held that the District Court, 1) properly allowed the fact that Kao was incarcerated when he wrote his letter, and 2) properly disallowed any evidence regarding alleged sexual abuse to E.M. by Tim Morris, we hold that the doctrine of cumulative error is inapplicable to this case.

Affirmed.

_____
Chief Justice

We concur:

_John Conway Harrison_

_[signature]_

_William E Hunt Sr_

_John C. Sheehy_
             Justices