No. 91-230

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

ROBERT MICHAEL RHYNE,

      Defendant and Appellant.

FILED

JUL 2 1992

Ed _____
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Benjamin R. Anciaux, Attorney at Law, Polson, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Cregg W. Coughlin, Assistant Attorney General, Helena, Montana
          Larry Nistler, County Attorney, Kathleen O'Rourke-Mullins, Deputy County Attorney, Polson, Montana

Submitted on Briefs:  March 5, 1992

Decided:  July 2, 1992

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The defendant, Robert Michael Rhyne, appeals his convictions on five counts of incest following a jury trial in the District Court of the Twentieth Judicial District, Lake County. We affirm.

We address the following issues on appeal:

1. Did the District Court err in ruling that the defendant could not introduce into evidence the victim's medical records obtained by the defendant or testimony based on the records?

2. Did the District Court err in granting the State's motion in limine to exclude evidence relating to the victim's claimed abortion?

**3.** Did the District Court err in denying the defendant's discovery request to obtain the victim's records from her current psychological counselor?

**4.** Was the defendant denied a fair trial as a result of prosecutorial misconduct?

Vicki L. became engaged to Rhyne in **1986.** In April **1986,** she and her four children from a previous marriage, including K.L., began residing with Rhyne in Polson, Montana. Vicki L. and Rhyne were married in August **1986.**

K.L. testified that she was sexually assaulted by Rhyne on several occasions between October **1986** and September **1988.** Throughout this period of time K.L. was under eighteen years of age. K.L. testified that she was first assaulted by Rhyne after she accidently discovered him in his bedroom having extramarital sexual relations. She claimed that, upon her discovery, Rhyne

2

became physically abusive, threw her to the floor and had sexual intercourse with her while the other person held her down.

K.L. testified that she was next assaulted after she had become angry with her mother and hit her. K.L.'s mother asked Rhyne to discipline her. In response to the request, Rhyne threw K.L. into her bedroom and, in the course of striking her, fondled her breasts and pubic area.

According to K.L., another assault occurred when Rhyne chased her into her bedroom to discipline her. She testified that Rhyne had sexual intercourse with her, after which he forced her to perform oral sex. K.L. stated that a fourth assault occurred when Rhyne had sexual intercourse with her after she and Rhyne argued over which television program to watch. K.L. further testified that Rhyne had sexual intercourse with her on another occasion after he returned home from work and found her still asleep in bed.

Rhyne was charged by an information filed on August 11, 1989 with five counts of incest. Following a period of discovery, the State filed a motion in limine on October 15, 1990, seeking to exclude evidence of K.L.'s prior sexual conduct pursuant to § 45-5-511(4), MCA (1989). K.L. told her counselors that she previously had been sexually assaulted by an uncle and her natural father and had sexual contact with another youth. These revelations were contained within medical records released to Rhyne in response to his pretrial discovery requests.

Rhyne filed a motion in limine on October 18, 1990, seeking approval of the admission of evidence regarding K.L.'s prior sexual

abuse. He argued that such evidence was admissible to rebut the State's offered expert testimony that **K.L.** suffered from borderline personality disorder, depression and post-traumatic stress disorder. The parties' motions in limine were orally argued to the court that afternoon: the court did not make a ruling at that time.

That same day, the State filed an objection to the disclosure of K.L.'s records from her current psychological counselor, Dr. Joan Hess-Homeier, which Rhyne had requested. The State opposed the disclosure on the grounds that nothing within Dr. Hess-Homeier's records pertaining to **K.L.** was relevant or exculpatory, **K.L.'s** right to confidentiality outweighed Rhyne's right to discovery and disclosure would jeopardize the doctor-client relationship between Dr. Hess-Homeier and **K.L.** The State requested the court to deny Rhyne access to Dr. Hess-Homeier's records outright or, in the alternative, inspect the records <u>in</u> <u>camera</u> to determine their relevancy. The State's objection was orally argued to the court that afternoon. After being informed that the State did not intend to call Dr. Hess-Homeier as a witness at trial or rely on her records and that Rhyne had not made a request for a current psychological evaluation of **K.L.** by a psychologist of his choice, the court ruled that Rhyne could not obtain Dr. Hess-Homeier's records pertaining to **K.L.**

The next day, on October 19, 1990, the District Court granted the State's motion in limine to exclude evidence of **K.L.'s** prior sexual conduct pursuant to § 45-5-511(4), MCA (1989). The court's order prohibited "reference to or offering evidence concerning the

alleged victim's past sexual conduct with anyone other than the Defendant." The court also denied Rhyne's motion in limine to introduce evidence of K.L.'s prior sexual abuse.

Several pleadings then followed. Rhyne filed an amended notice of witnesses on October 22, 1990, in which he stated that he intended to call Dr. James Wemple as an expert to testify regarding the effect of prior sexual assaults upon K.L. The State requested a clarification of the court's October 19, 1990 order to determine what evidence would open the door to Rhyne's introduction of K.L.'s prior sexual abuse. The State also filed a motion in limine to exclude evidence relating to K.L.'s claim that she had undergone an abortion as a result of becoming pregnant by Rhyne. Rhyne sought reconsideration of the court's ruling that K.L.'s prior sexual abuse was not admissible.

A hearing regarding the various pleadings filed by Rhyne and the State was held on October 24, 1990. The District Court ruled that Rhyne could not introduce evidence relating to K.L.'s alleged abortion unless the State first opened the door to such evidence. The court also ruled that evidence of K.L.'s prior sexual abuse could not be introduced by Rhyne unless the State opened the door regarding K.L.'s prior sexual abuse or her mental condition. On the basis of this latter ruling, the State informed the court and Rhyne that it would not call an expert to testify. Additionally, in light of its ruling regarding the State's opening the door to K.L.'s prior sexual abuse, the court deferred, until trial, ruling on the admissibility of K.L.'s medical records which were obtained

by Rhyne and served as the basis of his expert's opinion concerning K.L.

**A** jury trial was held on October 25, 26 and 29, 1990. During voir dire, the prosecutor inquired of the prospective jurors if any of them would feel uncomfortable telling a group of people the details of his or her first sexual experience. In chambers, Rhyne objected to any reference to the incest claims as K.L.'s first sexual experiences. The court instructed the prosecutor to avoid any comments which would suggest that the alleged acts of incest were K.L.'s first sexual experiences.

During the defendant's case-in-chief, Dr. Wemple was called to testify and was qualified as an expert. When defense counsel asked Dr. Wemple whether he had received and reviewed any information regarding K.L., a recess was taken to allow the court to further consider and rule upon the admissibility of K.L.'s medical records. Thereafter, the court concluded that the State had not opened the door to K.L.'s prior sexual abuse or mental condition and ruled that Rhyne could not introduce K.L.'s medical records or present testimony, based on the records, regarding her mental condition.

The jury found Rhyne guilty on all five counts of incest. He was sentenced to ten years in prison on each count with the sentences to run consecutively. The District Court suspended the sentences on four of the five counts and ordered Rhyne to complete sexual offender treatment at the prison. Rhyne appeals.

**I.**

Did the District Court err in ruling that the defendant could

not introduce into evidence the victim's medical records obtained by the defendant or testimony based on the records?

Rhyne presents several arguments in support of his position that the District Court erred in prohibiting the introduction of K.L.'s medical records into evidence. We will not disturb a district court's ruling on the admissibility of evidence absent an abuse of discretion. State v. Hall (1990), 244 Mont. 161, 169, 797 P.2d 183, 189.

Rhyne first asserts that he was denied his Sixth Amendment right to confront witnesses against him because he was not permitted to introduce K.L.'s medical records or discuss her mental condition. He argues that, as a result of the court's ruling, he was not able to effectively cross-examine K.L.

The medical records at issue were obtained by Rhyne through pretrial discovery and contained information regarding K.L.'s prior sexual abuse. Rhyne attempted to use the records to support his claim that K.L. was suffering from a mental condition which was caused, at least in part, by her prior sexual abuse and which reduced her credibility.

The District Court's order of October 19, 1990 prohibited the introduction of evidence of K.L.'s prior sexual abuse pursuant to § 45-5-511(4), MCA (1989), which provides:

> (4) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except:
>
> (a) evidence of the victim's past sexual conduct with the offender;
>
> (b) evidence of specific instances of the victim's

sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

K.L.'s medical records which were obtained by Rhyne and evidence of her mental condition were excluded on the basis that such evidence would violate the court's October 19, 1990 order prohibiting evidence regarding K.L.'s prior sexual abuse.

We previously have held that, under § 45-5-511(4), MCA (1989), sexual conduct of the victim which is inadmissible includes prior sexual abuse. State v. Van Pelt (1991), 247 Mont. 99, 103, 805 P.2d 549, 552. Additionally, we held in Van Pelt that a defendant's constitutional right to confront witnesses is not violated by the exclusion of evidence of the victim's prior sexual abuse unless the victim's accusations or allegations of prior sexual abuse have been proven to be false or are admitted to be false. Van Pelt, 247 Mont. at 104, 805 P.2d at 552; see also State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193 (limiting a defendant's cross-examination of a complaining witness in a sex offense case where there is evidence of prior false accusations infringes upon the defendant's constitutional right to confront witnesses).

In the present case, K.L.'s claims of prior sexual abuse had not been adjudicated to be false, nor were they admitted to be false. As such, evidence pertaining to K.L.'s prior sexual abuse as a means to attack her credibility was not admissible.

In addition, Rhyne was allowed to thoroughly cross-examine K.L.; his cross-examination was restricted only when he attempted to elicit testimony regarding K.L.'s prior incidents of sexual

8

abuse and the medical records that documented them. Defense counsel questioned K.L. regarding the times, places and circumstances surrounding the alleged assaults by Rhyne. He asked K.L. about inconsistent statements that she had given to a law enforcement officer concerning the assaults. He asked her about statements regarding the assaults that she claimed to have made to friends. In addition, defense counsel inquired about K.L.'s feelings toward Rhyne, her anger toward him for moving the family to a house out of town and other possible influences upon her testimony.

Defense counsel asked K.L. at one point during cross-examination if she had always told the truth to her counselors. K.L. admitted that she had not revealed certain facts, but she denied that she had lied. In chambers, the State objected to defense counsel's inquiry on the grounds that he was merely attempting to introduce K.L.'s mental condition so as to open the door to prior sexual abuse. Defense counsel openly admitted that he wished to discuss K.L.'s medical records for impeachment purposes. The court stated that it would not allow defense counsel to use the medical records for impeachment. The court did, however, permit defense counsel to inquire of K.L. what facts she claimed to have withheld from her counselors. Thus, consistent with the court's earlier ruling, Rhyne's cross-examination was limited only with regard to evidence of K.L.'s prior sexual abuse. The record clearly shows that Rhyne was afforded the opportunity to effectively cross-examine K.L. We conclude, therefore, that

Rhyne's right to confrontation was not violated.

Rhyne next asserts that the District Court's ruling concerning K.L.'s medical records was erroneous because it prevented him from presenting his defense through an expert witness. Rhyne wished to present the testimony of Dr. Wemple in an attempt to show that **K.L.** suffered from depression and other mental disorders and that her mental condition may have existed prior to Rhyne's alleged assaults. In addition, Rhyne wished to show that **K.L.'s** mental condition adversely affected her credibility. The District Court inquired of defense counsel:

> THE COURT: [Tell me how] you believe that Doctor Wemple could give me meaningful testimony without relying upon the kinds of evidence which the Court has excluded, specifically the prior sexual offenses by persons other than this defendant.
>
> [DEFENSE COUNSEL]: I've asked Doctor Wemple that question. And he said, "I can't ignore them as a part of understanding who she is, but I don't have to talk about them to the jury." In other words, he can review the whole record and have it in hand and in mind but as he explains the psychology underlying **[K.L.]** and people like her, he doesn't have to refer to sexual assaults -- other sexual assaults at all. . . .
>
> THE COURT: He won't refer to it but nevertheless it's an integral and essential part of his reaching the conclusion.
>
> [DEFENSE COUNSEL]: But the jury will never know that. He simply is going to discuss his conclusions based on having read the records unless I or the State asks him specifically what parts of the record he relies upon.
>
>
> THE COURT: But your expert simply can't give expert testimony without the material that's been excluded as forming the basis for his opinion.
>
> [DEFENSE COUNSEL]: That's correct -- not correct,

10

your Honor. He thinks he can talk about who this girl is. He can start from her diagnosis, which I've described to you, and then describe what that class of people is like and the problems that arise with credibility.

THE COURT: That very diagnosis is based upon her entirety [sic].

[DEFENSE COUNSEL]: Yes, of necessity, but he doesn't have to testify as to the elements of that, so there is no prejudice. They're not going to be talking about sexual assaults.

The court ruled that Dr. Wemple could not give any testimony regarding K.L.'s mental condition which would be based upon her medical records. Rhyne argues that the court erred by not allowing Dr. Wemple to testify without specifically referring to K.L.'s prior sexual abuse. We disagree.

Rhyne's argument ignores the fact that K.L.'s medical records and mental condition, upon which his expert's testimony would have been based, were inextricably related to her claims of prior sexual abuse. It is clear from the colloquy between the court and defense counsel that K.L.'s prior sexual abuse was an integral part of both the medical records and Dr. Wemple's offered testimony. To allow Dr. Wemple's testimony would have been to allow Rhyne to circumvent the court's order prohibiting evidence, pursuant to § 45-5-511(4), MCA (1989), of K.L.'s prior sexual abuse.

Finally, Rhyne asserts that the District Court erred in prohibiting the introduction of K.L.'s medical records because they contained "[n]umerous other examples showing [K.L.'s] biases, motives and prejudices that could cause her to testify falsely." Rhyne's assertion lacks merit. Although the records in question were obtained during discovery and reviewed by Rhyne, he did not

11

point out during trial, nor does he now, what these "numerous" examples are or how they could have been used to challenge K.L.'s testimony. Rhyne's unsupported and conclusory allegation is inadequate to show that the court abused its discretion in making its ruling. For the foregoing reasons, we hold that the District Court did not abuse its discretion and, thus, did not err in ruling that Rhyne could not introduce **K.L.'s** medical records into evidence.

## II.

Did the District Court err in granting the State's motion in limine to exclude evidence relating to the victim's claimed abortion?

K.L. told an investigating officer that she had become pregnant by Rhyne and had aborted the pregnancy in Missoula. She maintained that she did not know where the abortion had been performed but did indicate that it may not have occurred in a medical clinic. Rhyne used a release form signed by **K.L.** and her mother in an unsuccessful attempt to find records of the abortion. Rhyne argues on appeal that the District Court's ruling excluding evidence relating to **K.L.'s** claimed abortion erroneously deprived him of an opportunity to attack **K.L.'s** credibility on what he contends was "a false report of an abortion."

The State's motion in limine and oral argument at the hearing on the motion were based largely on its contention that evidence regarding **K.L.'s** claimed abortion was irrelevant to the incest charges and, thus, inadmissible pursuant to Rule 402, M.R.Evid.

The State's motion and argument were also based on its contention of undue prejudice with respect to casting K.L. as a "bad" person for having an abortion. In response, Rhyne argued that the evidence was relevant to K.L.'s credibility and, therefore, admissible. The District Court granted the motion to exclude the abortion related evidence but did not state the basis for its ruling. It did state that it would permit the introduction of the evidence if the State opened the door to such evidence at trial.

Rule 401, M.R.Evid., defines relevant evidence as evidence having any tendency to make the existence of any fact in question more probable or less probable than it would be without the evidence; it may include evidence bearing upon a witness' credibility. Under Rule 402, M.R.Evid., relevant evidence is generally admissible while irrelevant evidence is not admissible. Rule 403, M.R.Evid., provides that relevant evidence may be excluded under certain circumstances:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As stated earlier, the District Court's determination of the admissibility of evidence will not be disturbed absent an abuse of discretion. Hall, 244 Mont. at 169, 797 P.2d at 189.

This Court is very protective of a defendant's right to show lack of veracity and credibility of a complaining witness, particularly in sex offense cases where it is often one person's word against that of another. See, e.g., Anderson, 211 Mont. 272,

13

686 P.2d 193 (general policy against sordid probes into a victim's past sexual conduct is not violated if the offered evidence can be narrowed to the issue of the complaining witness' veracity).  We conclude that in this case the excluded evidence did have some relevance under Rule 401, M.R.Evid., in that it may have touched on K.L.'s credibility.

We further conclude, however, that the limited relevance or probative value of the evidence was outweighed by its prejudice to K.L. and confusion of the issues under Rule 403, M.R.Evid.  Rhyne could not show with certainty that K.L. did not have an abortion and he admitted at the hearing on the motion that he did not have impeaching evidence "of an absolute nature."  He nevertheless wanted to show that the abortion was "unlikely" through "a lot of facts" which flowed from K.L.'s statement that she had the abortion.  Rhyne essentially wanted to work backwards--showing that the abortion was "unlikely," therefore K.L.'s pregnancy did not occur, therefore sexual intercourse/incest did not occur.  This approach not only presented a danger of undue prejudice to K.L. but also was circuitous and confusing.  The District Court noted the possibility of the evidence's relevance but then, after considering all of Rhyne's arguments and offer of proof, granted the State's motion with the condition that the evidence could be introduced if the State opened the door at trial.  Under these particular facts and Rule 403, M.R.Evid., the court's ruling did not constitute an abuse of discretion.  We hold that the District Court did not err in granting the State's motion in limine to exclude evidence of

14

K.L.'s claimed abortion.

### III.

Did the District Court err in denying the defendant's discovery request to obtain the victim's records from her current psychological counselor?

Rhyne contends that the District Court erred when it denied his discovery request to obtain K.L.'s records from her current psychological counselor, Dr. Hess-Homeier. He asserts that the court should have conducted an *in camera* inspection of those records "[t]o determine if they contained material [he] should have had access to" before ruling that they were not to be disclosed. He argues that the court's ruling denied him his constitutional right to confront witnesses against him.

We find no error on the part of the District Court in failing to inspect Dr. Hess-Homeier's records pertaining to K.L. *in camera* before ruling on Rhyne's discovery request. Dr. Hess-Homeier was not a witness against Rhyne and the State did not rely on her records as part of its case. Moreover, Rhyne neither requested permission to conduct an *in camera* inspection of the records nor requested the District Court to make such an inspection.

In addition, the District Court's refusal to grant Rhyne's discovery request did not violate his right of confrontation. In State v. Reynolds (1990), 243 Mont. 1, 792 P.2d 1111, we affirmed the district court's refusal to order the release and disclosure of the victim's medical and psychiatric records. We held that the defendant was not denied his right of confrontation, stating:

15

"[T]he right of a defendant to confront his accusers is not equivalent to a constitutionally compelled rule of pretrial discovery. Rather, the right of confrontation is a _trial_ right, guaranteeing an opportunity for effective cross-examination. See Pennsylvania v. Ritchie, **480** U.S. **39, 109** S.Ct. **989, 94** L.Ed.2d **40 (1987)."** [Emphasis in original.]

Reynolds, **243** Mont. at **7, 792** P.2d at **1115** (quoting People **v.** Exline (Colo. App. **1988), 775** P.2d **48, 49).** Because the defendant: was afforded the opportunity at trial to cross-examine all witnesses against him, the court's ruling denying him access to the records did not violate his right of confrontation. Reynolds, 243 Mont. at **8, 792** P.2d at **1115** (citing State v. Thiel **(1989),** 236 Mont. **63, 768** P.2d **343).**

In the present case, Rhyne was afforded the opportunity to effectively cross-examine all witnesses against him. Therefore, he was not denied his right of confrontation. We hold that the District Court did not err in denying Rhyne's discovery request to obtain Dr. Hess-Homeier's psychological records pertaining to K.L.

IV.

Was the defendant denied a fair trial as a result of prosecutorial misconduct?

As previously noted, the prosecutor inquired during voir dire of the prospective jurors if any of them would feel uncomfortable telling a group of people the details of his or her first sexual experience. After an objection by Rhyne, the court instructed the prosecutor to make no further comments which would suggest that the alleged acts of incest were K.L.'s first sexual experiences. Rhyne contends that the prosecutor's comment denied him a fair trial

16

because he was not allowed to present "[a]ny possible explanation for K.L.'s motives, biases and prejudices other than his guilt to the offense charged."

"It has long been the law of this state that prejudice in a criminal case will not be presumed, but must appear from the denial or invasion of a substantial right from which the law imputes prejudice." State v. Miller **(1988), 231** Mont. **497, 507, 757** P.2d **1275, 1281.** Rhyne has not demonstrated that he was prejudiced by the prosecutor's comment. Our review of the record reveals that the thrust of the comment was not the suggestion that the alleged acts were K.L.'s first sexual experiences. Rather, it was made to elicit a response from the jury panel with respect to the potential difficulty on K.L.'s part to testify about the alleged acts of incest. Significantly, although Rhyne objected to the prosecutor's comment, he did not request the District Court to admonish the jury panel or give a cautionary instruction. Nor did he request a mistrial. Given these circumstances, we hold that Rhyne was not denied a fair trial as a result of prosecutorial misconduct.

Affirmed.

We concur:

_____
Justice

_____
_____
_____
_____
Justices

17

July 2, 1992

<u>CERTIFICATE OF SERVICE</u>

**I** hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Benjamin R. Anciaux
Attorney at Law
107 Sixth Ave. E., PO Box 1670
Polson, MT 59860

Hon. Marc Racicot, Attorney General

Justice Bldg.
Helena, MT 59620

Larry Nistler, County Attorney
Kathleen O'Rourke-Mullins, Deputy
Lake County Courthouse, 106-4th Ave. E.
Polson, MT 59860-2183


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy