NO. 94-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

     Plaintiff and Respondent,

  v.

DUANE STUIT,

     Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

       Mark T. Errebo, Deputy Public Defender,
       Billings, Montana

    For Respondent:

       Hon. Joseph P. Mazurek, Attorney General,
       Patricia Jordan, Assistant Attorney General,
       Helena, Montana

       Dennis Paxinos, Yellowstone County Attorney,
       Marcia Good Sept, Deputy County Attorney,
       Billings, Montana

FILED

Submitted on Briefs: September 22, 1994

Decided: December 6, 1994

Filed: DEC 06 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Duane Stuit was found guilty of four counts of sexual intercourse without consent of a minor in the Thirteenth Judicial District Court, Yellowstone County. Stuit moved for a new trial on the grounds that the prosecutor made a comment in her opening statement which should have allowed the defense to introduce evidence of the **victim's** previous history of sexual abuse. The District Court prohibited the defense from introducing such evidence at trial. The District Court denied the motion for a new trial and Stuit appeals. We affirm.

We frame the issues on appeal as follows:

1. Did the prosecutor's comment during opening statements open the door to testimony regarding the **victim's** history of prior sexual abuse?

2. Was the defendant prejudiced by the prosecutor's comment during opening statements?

3. Did the District Court properly deny the defendant's motion for a new trial?

On December 26, 1992, a Billings City Police Officer, Mark Keyes, responded to a domestic disturbance call at the residence where Stuit lived with the mother of S.M., a minor. The police placed Stuit under arrest for assault or domestic abuse and placed him in the Yellowstone County Detention Facility. Officer Keyes then returned to the residence to take an additional report. When he returned, S.M., her mother, her brother, and another person were at the house.

2

While Officer Keyes was interviewing the mother, S.M. volunteered to him that she had been sexually abused by Stuit earlier that evening. Officer Keyes gathered more information from S.M. regarding the alleged sexual abuse and filed an initial report. Officer Keyes referred the initial report to the detective division for follow-up investigation. The Department of Family Services removed S.M. from the home, and Stuit was subsequently charged by information with four counts of sexual assault without consent and one count of witness tampering.

Prior to trial, the State filed a motion in limine pursuant to Montana's rape shield provisions under § 45-5-511, MCA, to exclude evidence that S.M. had been sexually assaulted by another person prior to the alleged incidents with Stuit. Counsel met in the judge's chambers before trial to argue the motion. The transcript of the pretrial proceedings reveals that defense counsel stated:

> We agree the Rape Shield Statute prevents us from bringing [S.M.'s prior sexual abuse] up in our case in chief, however, we will notify the court and counsel that we intend to bring that up if the door is opened. We do feel especially medical personnel can open that door, and we feel--our position is that her knowledge of the sexual abuse--of sex itself can open that door through the testimony of the doctor, which is going to be offered here.
>
> We made another motion in limine to keep out the testimony of [Dr. Johnson. If that motion is denied,] however, that testimony let's [sic] in the doctor's testimony that the child was honest; that she knew about things about sexual abuse, it's obvious that she could have gotten that information from her prior perpetrator, so we feel that if the doctor testifies to that, that opens the door and we should be able to mention that, because certainly that is something that obviously we would like to have in evidence, but we are not going to go against the Rape Shield Statute.

3

(Emphasis added).  The State responded:

> In response to his arguments that were just made,
> all of the cases . that is not admissible to impute
> knowledge of sexual abuse, simply isn't a way to get
> around the Rape Shield Statute.
>
> . . '
>
> I think the defense is trying to set up a way itself
> to violate the Rape Shield Statute through [D]octor
> Johnson. The state is not going to ask her and can't ask
> her, "Do you think [S.M.] is being truthful"?

The District Court then stated, "That certainly would be my ruling.
You can't open the door. If you try, there [are] going to be some
repercussions, I can assure you."

The State then explained that the defendant might try to
personally testify regarding S.M.'s prior sexual abuse. The State
argued that such testimony would not be admissible. The District
Court told defense counsel to instruct the defendant that such
testimony "is not permissible, and that there can be other
sanctions imposed if he attempts it." The District Court then
granted the State's motion in limine to prohibit evidence and
testimony regarding S.M.'s prior sexual abuse.

At trial, the prosecutor made the following comments in her
opening statement:

> During this trial you're going to find [S.M.] got to look
> back on childhood and get [sic] to remember a mom, as she
> will tell you, who was in the same bed with her when this
> man sexually abused her; while the person who was
> supposedly acting as her father, took away her innocence
> through sexual acts most consenting adults don't even
> engage in.

Neither party made any objections during the other side's
opening statement. At the close of defense counsel's opening

4

**statement**, the State asked to approach the bench. Counsel for both parties approached and then **met** with the judge in chambers.

The transcript reveals that a lengthy discussion took place in chambers. The State expressed its concern over defense counsel's opening statement, contending that he impermissibly mentioned S.M.'s prior sexual abuse. Defense counsel argued that the State's reference to S.M.'s innocence, in the context of this case, meant sexual innocence, and therefore, opened the door for testimony regarding S.M.'s prior sexual abuse.

The court then stated:

> [W]hat I couldn't quite understand is why there was no objection **from** the defense the moment that remark was made. Now the state apparently has got **some** objection to something you said, yet, there was no objection.

The attorneys attempted to explain their reasons for not objecting in a timely manner. The State argued that it did not want to call undue attention to defense counsel's mention of prior sexual abuse. Defense counsel stated that he had practiced in another state and did not think it was proper to object during the middle of opening statements. The District Court berated both sides for arguing during their opening statements and for failing to make timely objections. The District Court stated:

> You have got to make the objection. If you don't, then the jury has already been tainted. I can't direct them to disregard it. Whole thing becomes **moot.**
>
> .
>
> You're going to have to make the objection **at** the **time so** that we can handle it then, not come in chambers later in the day.

5

The District Court finally told the State, "If you're going to open the door, you came dangerously close to doing that." However, the court concluded that "I'm not going to make a ruling [that] she opened the door at this time."

At trial, S.M. testified that during nine or more months when she was nine years old, Stuit sexually abused her approximately three **times a** week. S.M. testified that Stuit put his fingers and tongue into her vagina, put his penis into her mouth and ejaculated, and put his penis into her rectum. The State additionally called Dr. Linda Johnson and several law enforcement personnel, including Officer Keyes. No physical evidence of sexual abuse was produced by the State. The defense called two witnesses in addition to Duane Stuit. Stuit took the stand and denied committing the alleged acts.

The jury returned guilty verdicts on all four counts of sexual intercourse without consent and a not guilty verdict on the witness tampering count. Stuit moved the District Court for a new trial on the grounds that the prosecutor made an improper comment during opening statements. Both parties submitted briefs. The District Court denied the motion and issued an order and memorandum on December 17, 1993. Stuit appeals the denial of his motion for a new trial.

## ISSUE 1

Did the prosecutor's comment during opening statements open the door to testimony regarding S.M.'s history of prior sexual abuse?

6

The standard of review of discretionary district court rulings is an abuse of discretion standard, and we will affirm the district court's ruling absent a showing of clear error. State v. Andersen (1993), 260 Mont. 354, 358, 860 P.2d 115, 118.

In its memorandum denying Stuit's motion for a new trial, the District Court stated:

> Had counsel for the defendant made prompt objection to the prosecutor's statement, requesting either that it be stricken and the jury instructed to disregard it, or for a mistrial, the court would have been able to make a ruling. Moreover, defense counsel did not request such a ruling from the court, even in the hearing in chambers. As shown by the transcript of the hearing in chambers, counsel was more concerned with obtaining a ruling from the court to the effect that the remark had opened the door to evidence of the victim's past sexual abuse. This, the court denied. (See page 17 of transcript.)
>
> In essence, the defendant's motion is an attempt to get the court to reconsider its ruling denying counsel the opportunity to put in evidence the victim's past sexual abuse.
>
> Section 46-20-104(2), MCA, provides that
>
> [u]pon appeal from a judgment, the court may review . . any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

Section 46-20-701(2), MCA, states:

> Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment <u>and that</u>:
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

(Emphasis added.)

We have stated that where a criminal defendant fails to make a contemporaneous objection to the prosecution's characterization of the facts during trial, this Court is precluded "from addressing the issue under § 46-20-104(2), MCA, unless the criteria under § 46-20-701(2), MCA, can be met or the comments create an exception to the 'plain error' doctrine." State v. Arlington (Mont. 1994), 875 P.2d 307, 325, 51 St. Rep. 417, 430 (citing State v. Rodgers (1993), 257 Mont. 413, 417, 849 P.2d 1028, 1031). A contemporaneous objection is one which is made at trial in a timely manner and upon specific grounds, which appears on the record, and which is made as soon as the ground for the objection becomes apparent. See Kizer v. Semitool, Inc. (1991), 251 Mont. 199, 207, 824 P.2d 229, 234; Story v. City of Bozeman (1993), 259 Mont. 207, 217, 856 P.2d 202, 208.

Stuit asserts that "[a]fter the close of opening statements by both sides, Stuit's counsel objected to the [prosecutor's] remarks" regarding S.M.'s innocence. Nowhere in the transcript, however, is an explicit statement made by defense counsel objecting to the prosecutor's remarks regarding S.M.'s innocence and stating the grounds for such objection. In fact, the record reveals that the

discussion between counsel and the judge in chambers centered on the State's objection to defense counsel's opening statement. Stuit further asserts that the District Court "acknowledged [that] the remarks were objectionable." While the District Court stated to the prosecutor, "If you're going to open the door, you came dangerously close to doing that," the court concluded that "I'm not going to make a ruling [that] she opened the door at this time." Stuit's assertion that the court "acknowledged" the prosecutor's remarks as "objectionable" is a mischaracterization of the record.

We conclude that Stuit's counsel failed to make a contemporaneous objection to the prosecutor's comment during opening statements, that Stuit does not meet the criteria under § 46-20-701(2), and therefore, the doctrine of plain error is inapplicable in this case.

Stuit further argues that the reason his

> counsel did not move the court for a mistrial or to instruct the jury to disregard the statement [was] that neither [option] was the relief which was proper at the time. . . A new trial . was not in Stuit's best interest at the time of the objection because it would only have the effect of putting Stuit back in the same position as he was at the start of the trial, namely, unable to explain to the jury how S.M. could be making these charges.

In essence, the defense chose not to object because it hoped that the prosecution had opened the door for the defense to introduce evidence "to explain to the jury how S.M. could be making these charges," that is, to explain that she had been sexually abused by another person in the past.

9

Where the defendant is charged with a sex crime, § 45-5-511, MCA, governs the admissibility of evidence concerning the sexual conduct of the victim. Subsections (2) and (3) of § 45-5-511, MCA, are referred to as the "rape shield" provisions and provide as follows:

> (2) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.
> (3) If the defendant proposes for any purpose to offer evidence described in subsection (2), the trial judge shall order a hearing out of the presence of the jury to determine whether the proposed evidence is admissible under subsection (2).

The standard of review for the application of the rape shield provisions is a manifest abuse of discretion standard. State v. Howell (1992), 254 Mont. 438, 445, 839 P.2d 87, 91, *cert. denied* (1993), 113 S. Ct. 1862; State v. Van Dyken (1990), 242 Mont. 415, 435, 791 P.2d 1350, 1362-63, *cert. denied* (1990), 498 U.S. 920.

It is well-settled law that the prior sexual abuse of the victim is inadmissible under the rape shield provisions. Howell, 839 P.2d at 92; State v. Rhyne (1992), 253 Mont. 513, 519, 833 P.2d 1112, 1116; State v. Van Pelt (1991), 247 Mont. 99, 103, 805 P.2d 549, 552; State v. Kao (1990), 245 Mont. 263, 269-70, 800 P.2d 714, 717-18. We have held that

> a defendant's constitutional right to confront witnesses is not violated by the exclusion of evidence of the victim's prior sexual abuse unless the victim's accusations or allegations of prior sexual abuse have been proven to be false or are admitted to be false.

Rhyne, 833 P.2d at 116; Howell, 839 P.2d at 91; Van Pelt, 805 P.2d at 552. Stuit does not allege that S.M.'s allegations of prior sexual abuse are false.

Stuit argues:

> [O]bviously, in a case where a 10 year old's testimony is the only evidence for the state and that child has been a victim of the same crime before, any implication by the prosecutor that the defendant was the only abuser is improper.

In Van Pelt, 805 P.2d at 552, this Court rejected a similar argument:

> Appellant cannot argue . . . that he does not seek to attack [the childl's credibility but rather seeks to demonstrate that [the child] could have gained her knowledge of sex outside of her contact with defendant. The major purpose in appellant's attempt to bring into evidence the incidents of prior abuse is to attack [the childl's credibility. Whether under the guise of showing the jury how [the child] may have obtained her knowledge of sex, or not, the fact is appellant wished to convince the jury that [the child] fabricated the charges against him. The only way the jury could have found appellant not guilty . . would be by finding that [the childl's allegations were false. This is not to say that [the rape shield provisions] provide[] an impenetrable wall of protection for [the child] and does not allow for her credibility to be questioned or attacked. The Montana Rules of Evidence certainly allow the credibility of a witness to be attacked, however, these rules are not without limitation. See Rule 608, M.R.Evid. <u>Excluding evidence of alleged specific instances of prior abuse was within the discretion of the District Court.</u>

(Emphasis added.) Accord Kao, 800 P.2d at 718 (rape shield provisions provide no exception to warrant admission of evidence of prior sexual abuse).

We conclude that the District Court properly ruled that the prosecutor's comment did not open the door to testimony regarding S.M.'s prior sexual abuse. The District Court did not manifestly

abuse its discretion in prohibiting under the rape shield provisions testimony regarding S.M.'s prior sexual abuse.

ISSUE 2

Was the defendant prejudiced by the prosecutor's comment during opening statements?

In _Rhyne_, 833 P.2d at 1120, this Court rejected a defendant's claim of prosecutorial misconduct where the prosecutor, in jury voir dire, asked whether the panelists "would feel uncomfortable telling a group of people the details of his or her first sexual experience." The defendant in that case argued on appeal that the prosecutor's question implied to the jury panelists that the alleged acts of incest were the child's first sexual experiences. The defendant argued that "the prosecutor's comment denied him a fair trial because he was not allowed to present any 'possible explanation for [the child's] motives, biases and prejudices other than his guilt to the offense charged." _Rhyne_, 833 P.2d at 1120. In rejecting Rhyne's argument, we cited State v. Miller (1988), 231 Mont. 497, 507, 757 P.2d 1275, 1281, in holding that

> "[i]t has long been the law of this state that prejudice in a criminal case will not be presumed, but must appear from the denial or invasion of a substantial right from which the law imputes prejudice."

_Rhyne_, 833 P.2d at 1120. In _Rhyne_, we concluded that the defendant failed to demonstrate that he was prejudiced by the prosecutor's comment during voir dire.

12

Our review of the record reveals that the prosecutor's comment did not suggest that the alleged acts were S.M.'s first sexual experiences:

> [S.M.] doesn't care much for girl stuff. Kind of a tomboy at heart. Most of us get to look back on our childhoods; our families with love and affection. During this trial, you're going to find [S.M.] got to look back on her childhood and get [sic] to remember a mom, as she will tell you, who was in the same bed with her when this man sexually abused her; while the person who was supposedly acting as her father, took away her innocence through sexual acts most consenting adults don't even engage in.

> When we look back to our childhoods, when we were nine, we get to remember things like school, picnics, softball games, being tucked into bed at night, being read bedtime stories by parents who loved us.

Moreover, unlike defense counsel in Rhyne, defense counsel in the instant case failed to object at the time of the comment. Stuit failed to request that the District Court admonish the jury, nor did he request a mistrial. We conclude that Stuit has failed to demonstrate that he was prejudiced by the prosecutor's comment during her opening statement and that he was not denied a fair trial as a result of the prosecutor's comments.

## ISSUE 3

Did the District Court properly deny Stuit's motion for a new trial?

"The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion." Jim's Excavating Services, Inc. v. HKM Associates (Mont. 1994), 878 P.2d 248, 259, 51 St. Rep. 623, 631. For the reasons enunciated under Issue 1, we

13

conclude that the District Court did not abuse its discretion and properly denied Stuit's motion for a new trial.

Affirmed.

_William E. Hunt_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_[signature]_

_[signature]_
Justices