No. 89-30Q

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

JACK LEE CAMPBELL, a/k/a JAMES AUSTIN,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Blaine Anderson, Jr., Dillon, Montana
        Vincent J. Kozakiewicz, Dillon, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Elizabeth S. Baker, Asst. Atty. General, Helena
        Thomas R. Scott, County Attorney; Calvin J. Erb, Deputy,
        Dillon, Montana

Submitted on Briefs:  Jan. 4, 1990

Decided:  February 14, 1990

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jack Lee Campbell appeals from a jury verdict in the Fifth Judicial District Court, Beaverhead County. He was convicted of deliberate homicide, robbery, theft, and two counts of tampering with or fabricating physical evidence. We affirm.

The issues are:

1. Was Campbell denied a fair trial by prosecutorial misconduct during his cross-examination and during closing argument?

2. Did the District Court err in denying Campbell's requested instruction on flight?

On the afternoon of August 4, 1988, a body was found near the railroad tracks just north of Dillon, Montana. The victim had only a small amount of change and no identifying information on his person. He was later identified as Russell Junior Stubblefield, a/k/a Ronald Smith, a transient who had been seen in the Dillon area for several weeks. The victim had died from a subdural hematoma as the result of multiple severe injuries to the head. His injuries included a fractured nose, fractures of both the upper and lower jaws, a deep laceration of the jaw, bruised lips and eyes, swollen nose tissue, a laceration on the scalp, and a large hinge fracture at the base of the skull. He also had minor injuries indicating that he had been dragged across the ground prior to his death. At the autopsy conducted on the morning of

August 5, the pathologist estimated the victim had been dead one to two days.

The State's case against Campbell was based on circumstantial evidence. The evidence at trial showed that Campbell had been seen with the victim in and around Dillon for several weeks prior to the homicide. Campbell testified that he had been a transient for some fourteen years and had last been employed as a cherry picker in Oregon for two weeks in June 1988. Campbell and the victim had appeared together at the welfare and unemployment offices on several occasions, applying for food stamps and work. The victim had told a welfare agent that he and Campbell were traveling together. Both men listed their addresses, on their applications for food stamps, as camped along Highway 91 north of Dillon.

The State presented evidence at trial that on August 1, 1988, the victim had received a $569 money transfer through the Dillon Western Union office. That night, he rented a motel room for two people. A maid identified Campbell as an occupant of the room.

Campbell was last seen with the victim on the evening of August 3, 1988. They were drinking beer in the area where the victim's body was later found. That night, Campbell rented a motel room in Dillon. The next morning he purchased a bus ticket and went to Idaho Falls, Idaho.

In Idaho Falls, Campbell "lived it up" for several days. He checked into the Quality Inn, where he stayed for four nights. He

3

went out for fast food. In addition to buying six-packs or twelve-packs of beer in grocery stores, he drank mixed drinks in bars, at one of which he exhibited a large sum of cash and bought a round of drinks for the house. On August 8, Campbell returned to Dillon on a freight train. He was arrested the next day.

At the time he was arrested, Campbell had in his possession all of the food stamps which had been issued to the victim on August 3. Several articles of his clothing were stained with blood which was consistent with the victim's. All but one set of the clothes in Campbell's possession appeared to have been freshly laundered.

Additional evidence produced by the State included Campbell's fingerprints on several beer cans found at the site where the victim was killed and footprints matching Campbell's at the same site. Partially-burned papers revealing the victim's identity were found in a fire ring near where the body was found.

Campbell relied on an alibi defense, claiming that he had not been at the scene of the homicide on August 4. In his testimony, he described in detail his activities during the summer months of 1988 and testified that the cash for his Idaho trip was money he had saved over the summer. He testified that he had purchased the food stamps later identified as the victim's from an unknown transient in Idaho Falls. He further testified that his association with the victim was much less extensive than that claimed by

4

the State and denied traveling with, camping with, staying in the motel with, or visiting the welfare and unemployment offices with the victim. Much of the extensive cross-examination was devoted to developing inconsistencies in Campbell's testimony.

I

Was Campbell denied a fair trial because of prosecutorial misconduct during his cross-examination and during closing argument?

Campbell makes several arguments which we have grouped under this issue. First, Campbell argues that it was improper for the county attorney to ask him, during cross-examination, whether he believed another witness was lying. He also claims misconduct in that, in the county attorney's closing argument, the county attorney called Campbell a liar and expressed his personal opinion that Campbell was guilty. Last, Campbell argues that the cumulative effect of these errors deprived him of a fair trial.

The county attorney asked Campbell the following questions on cross-examination:

> Q. Okay. Let's talk about the second time that you talked to Sheriff Later and I. Do you recall telling Sheriff Later that you made $60 in Helena working two days?
>
> A. No, sir, I do not.
>
> Q. If Sheriff Later came in and testified to that fact he'd be lying?

5

A. I wouldn't know if he was lying or not. But I never made no statement to that fact.

Q. Well, if you never made that statement to him, then he'd be lying; wouldn't he?

Campbell's counsel objected that "[h]e's requiring the witness to harass another witness." The court overruled the objection. The county attorney continued with another question and never received an answer to the last question above.

Campbell cites State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341. In that case, the prosecutor began writing "lies" or "liar" on a chalkboard as he cross-examined the defendant. Defense counsel objected, the court sustained the objection, and the jury was admonished to disregard statements of counsel not based upon the evidence. Armstrong, 616 P.2d at 353.

Unlike Armstrong, in the present case the county attorney did not characterize anyone as a liar. He asked the defendant to characterize someone as a liar. The rationale in Armstrong dealing with statements of counsel not based upon the evidence does not apply. Although Campbell has cited cases from several jurisdictions which have held that asking a defendant to characterize another witness as a liar is error, the State has cited several in which such questions were ruled not erroneous. This Court has held that "[w]hen a defendant goes upon the witness stand in his own behalf, and denies the commission of the crime with which he is charged, a very wide latitude of cross-examination is allowed."

6

State v. Rhys (1909), 40 Mont. 131, 136, 105 P. 494, 496. In the absence of an answer to the question, we are unwilling to use it as grounds for reversal.

Campbell next objects to the State's characterization of him, in closing argument, as a liar. No objection was made to the first characterization, in which the county attorney explained his long cross-examination of Campbell as the only way to expose a "pathological liar." During defense counsel's closing argument, he said that Campbell was "not the type of man who's just going to come in here and make up a story to cover for himself." Campbell's counsel also stated in his closing argument that Campbell was "the most candid witness we've had, or at least at the top of the heap." In the State's rebuttal argument, the county attorney listed all of the situations where Campbell's testimony conflicted with his earlier statements, as examples of Campbell as a liar.

As to the first reference to Campbell as a "pathological liar," Campbell argues that he had a continuing objection from his objection to use of the word "liar" on cross-examination. We conclude that these were divergent enough in time and subject matter that a new objection was required. We will not review the reference where no objection was made at trial. State v. Wiman (Mont. 1989), 769 P.2d 1200, 1204, 46 St.Rep. 279, 286. The prosecution's extensive characterization of Campbell as a liar in rebuttal was made in response to the defense characterization of

him during its closing argument. We have held that no error may be claimed where the prosecutor's actions were provoked by defendant's counsel. State v. Close (1981), 191 Mont. 229, 242, 623 P.2d 940, 947. We hold that the characterizations of Campbell as a liar are not reversible error for that reason.

Campbell claims that, at the end of his closing argument, the county attorney improperly gave his personal opinion that Campbell was guilty. The challenged remarks were as follows:

> Ladies and gentlemen of the jury, the worst thing in the world and the last thing that this office wants to do is convict an innocent man.

Defense counsel objected and was overruled. The county attorney continued:

> But the second to the last thing that we want to do is turn a guilty man loose. I ask you, ladies and gentlemen of the jury, don't turn this man loose. Look at the evidence, look at what we've shown. The inescapable conclusion, who done it? Jack Lee Campbell. Thank you.

The law on prosecutorial comments about the guilt of an accused has been described as follows:

> It has been declared that, generally speaking, the duty of a prosecuting attorney, if convinced of the guilt of an accused, is to lead the jurors to a like assessment by pointing out to them, intelligently and impartially, that evidence which cannot reasonably justify any other conclusion; and that the better way of fulfilling such duty is to confine his argument to a fair effort to produce such a belief in the jurors' minds without directly

8

expressing the prosecutor's personalized views as such. In those instances in which a prosecutor's personalized argument has been considered misconduct, it has occasionally been reasoned that the expression of the prosecutor's knowledge of, belief in, or opinion as to guilt constitutes an invasion of the province of the jury and a usurpation of its function to declare the guilt or innocence of an accused and, moreover, that there is a danger that the jurors might, consciously or unconsciously, accept or adopt the prosecutor's views instead of exercising their independent judgment as to the conclusion to be drawn from the testimony. On the other hand, it has also been stated that the more practical and substantial reasons for considering a prosecutor's personalized argument improper are that the prosecutor's expression of his own views injects into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and adds to the probative force of the testimony adduced at the trial the weight of the prosecutor's personal, professional, or official influence. Thus, there are several different theoretical bases underlying the rules concerning the propriety of a prosecutor's personalized argument. . .

Annotation, Propriety and Prejudicial Effect of Prosecutor's Argument to Jury Indicating His Belief or Knowledge as to Guilt of Accused--Modern State Cases, 88 A.L.R.3d 449, 454-55 (1978).

In State v. Musgrove (1978), 178 Mont. 162, 582 P.2d 1246, rev'd. on other grounds after remand, 202 Mont. 59, 655 P.2d 982, the following statement by the prosecuting attorney was challenged:

We told you that we were going to give you every shred of evidence that we had, whether it was good or bad because we were convinced that all the evidence would convince you beyond a reasonable doubt the defendant was responsible for the death of John Linker.

9

> Now, we have kept our bargain. And after
> hearing all this testimony, I'm convinced that
> Musgrove is a liar and he is responsible.

Musgrove, 582 P.2d at 1252.

This Court reasoned that

> The first statement of the prosecutor that we
> have quoted above appears to be based on his
> analysis of the evidence and is a matter on
> which he could properly argue. Therefore no
> improprieties exist with respect to that
> portion of the closing argument. However,
> with respect to the second portion of the
> argument which we have quoted above, the
> prosecutor is expressing his personal opinion
> as to the guilt or innocence of the accused
> and it is therefore highly improper.

Musgrove, 582 P.2d at 1252.

In the present case, the county attorney did not state that he believed Campbell was guilty. He said that the inescapable conclusion from the evidence was that Campbell had committed the crimes. His remarks do not imply any knowledge separate from the evidence at trial: "Look at the evidence, look at what we've shown." We conclude that the county attorney's remarks in closing argument do not constitute reversible error.

Finally, Campbell argues that he was denied a fair trial based on the cumulative effect of the cross-examination and closing argument discussed above. While Montana recognizes that the accumulation of errors may prejudice a defendant's right to a fair trial, mere allegations of error without proof of prejudice are inadequate to satisfy the doctrine. State v. Grant (1986), 221

10

Mont. 122, 137, 717 P.2d 562, 572. In this case, the prosecution's challenged remarks and questions when viewed in the context of the lengthy trial were not prejudicial. The circumstantial evidence against Campbell was compelling. Campbell's own testimony was preposterous. In light of the entire record, we conclude that Campbell has not shown that he was prejudiced by the challenged questions and remarks.

The Court takes this opportunity to remind prosecuting attorneys of the provision of Rule 3.4(e) of the Montana Rules of Professional Conduct prohibiting a lawyer from stating in trial a personal opinion as to the guilt or innocence of an accused.

## II

Was the flight instruction given by the District Court erroneous?

The District Court instructed the jury, at Instruction No. 20:

> If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance, if any, to be attached to it are matter [sic] for the jury to determine.

Campbell argues that the court failed to instruct the jury on motives for departure inconsistent with consciousness of guilt. He asserts that his leaving Dillon on August 4 can be explained by

11

his transient lifestyle. He maintains that the court should have used his offered flight instruction instead of the one offered by the State.

The flight instruction given the jury was taken from the Montana Criminal Jury Instructions (1983). It accurately reflects the law. See State v. Burk (Mont. 1988), 761 P.2d 825, 828, 45 St.Rep. 1777, 1782. The instruction would have allowed the jury to find that Campbell's August 4 bus trip did not show flight. We hold that the flight instruction given was not erroneous.

Affirmed.

J. A. Turnage
Chief Justice

We concur:

John Conway Harrison

William E. Hunt Sr.

Diane G. Barz

R. C. McDonough

Justices