No. 95-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

     Plaintiff and Respondent,

vs.

DALE MICHAEL HANSON,

     Defendant and Appellant.



APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Katherine R. Curtis, Judge presiding

COUNSEL OF RECORD:

    For Appellant:

        Wendy Holton, Helena, Montana

    For Respondent:

        Joseph P. Mazurek, Attorney General, Carol Schmidt, Assistant Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: February 13, 1997

Decided: July 2, 1997

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court

This is an appeal from the Eleventh Judicial District Court, Flathead County. On July 21, 1995, the District Court entered an order denying Defendant Hanson's motion for new trial following a jury conviction of one count of sexual assault and one count of deviate sexual conduct. Subsequently, the District Court sentenced Hanson to two concurrent terms in the Montana State Prison. Hanson, through new counsel, appeals from the District Court's denial of his motion for new trial. We affirm.

We restate the following issues raised on appeal:

1. Are Defendant Hanson's claims of error reviewable under the common law plain error doctrine or alternatively under the cumulative error doctrine?

2. Was Defendant Hanson denied his constitutional right to effective assistance of trial counsel?

## FACTUAL AND PROCEDURAL BACKGROUND

Emmy Gregg (Emmy) and her then four-year-old son, Aaron, lived across the street from Defendant Hanson (Hanson) in Whitefish, Montana. Emmy and Hanson met during the summer of 1990 and began dating in October 1990. By May 1991, Emmy and Aaron moved into Hanson's home. In June 1992, Emmy and Aaron moved out of Hanson's home; however, Emmy and Hanson continued dating until the fall of 1993. Aaron testified at trial that during the time they all lived together, Hanson sexually abused him. Apparently, at Hanson's request, all three would shower together to conserve hot water. And, at times, only Hanson and Aaron would shower together. Aaron testified at trial that during the times that

he and Hanson showered alone, Hanson would wash Aaron's genital area and Aaron would wash Hanson's genital area. Also, Aaron testified that Hanson would tell Aaron to perform oral sex on him, which Aaron did on several occasions.

In the fall of 1993, Emmy became concerned about Aaron's behavior. In particular, Emmy noticed that Aaron was having nightmares about Hanson and expressed anger toward Hanson. Furthermore, Emmy noted that Aaron began wetting the bed, locking the door when he took baths, and hiding under the bed and in closets when the phone rang or someone came to the door. Emmy testified that when she asked Aaron on different occasions about any improper contact with Hanson, Aaron denied that it occurred.

However, on March 24, 1994, Emmy met Detective Maxine Lamb of the Flathead County Sheriffs Department and discussed her concerns. That same day Detective Lamb went to Aaron's school to interview him. During her one-half hour interview with Aaron, he disclosed incidents involving Hanson which Detective Lamb believed described sexual abuse. On April 14, 1994, Hanson was charged by Information in the Eleventh Judicial District Court, Flathead County, with one count of sexual assault and one count of deviate sexual conduct, both felonies, in violation of § 45-5-502(1) and § 45-5-505(1), MCA, respectively. At his May 27, 1994 arraignment, Hanson plead not guilty. A jury trial commenced on March 6, 1995. On March 9, 1995, the jury returned a verdict of guilty to both counts. Hanson filed a motion for a new trial on April 7, 1995. The District Court denied Hanson's motion for a new trial on July 2 1, 1995, holding that the testimony of Aaron,

3

Detective Lamb and Beatrice Rowe, Aaron's therapist, was all properly placed before the jury. On July 24, 1995, the District Court sentenced Hanson to twenty years in the Montana State Prison for the offense of sexual assault and ten years for the offense of deviate sexual conduct, both sentences to run concurrently. Hanson, now represented by different counsel, appeals from the District Court's denial of his motion for a new trial.

## DISCUSSION

1.    **Are Hanson's claims of error reviewable under the common law plain error doctrine or alternatively under the cumulative error doctrine?**

Hanson, through new appellate counsel, has raised numerous issues for the first time on appeal. Hanson contends that his trial was fundamentally unfair in violation of his rights under the Sixth Amendment of the United States Constitution and under Article II, Section 24 of the Montana Constitution, and, therefore, his convictions should be reversed. Hanson concedes that these issues were not properly preserved for appellate review. However, Hanson alternatively argues under both the plain error doctrine and under the cumulative error doctrine that this Court should, nonetheless, exercise its inherent power of appellate review conferred by the Montana Constitution to address the merits of his arguments and reverse his convictions. The State responds that neither doctrine is applicable in this case. We agree.

In State v. Finley (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, we explained that we employ the common law plain error doctrine only on a case by case basis:

[T]his Court may discretionarily review claimed errors that implicate a

4

> criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

Furthermore, the doctrine of cumulative error refers to a number of errors which prejudice a defendant's right to a fair trial. State v. Close (1981), 191 Mont. 229, 245, 623 P.2d 940, 948. However, "[w]hile Montana recognizes that the accumulation of errors may prejudice a defendant's right to a fair trial, mere allegations of error without proof of prejudice are inadequate to satisfy the doctrine." State v. Campbell (1990), 241 Mont. 323, 329, 787 P.2d 329, 333 (citation omitted).

Hanson begins by raising the three issues he previously presented to the District Court in his motion for new trial. First, Hanson asserts that Aaron's testimony was tainted and unreliable, and, therefore, should not have gone to the jury. Specifically, Hanson argues that Aaron's testimony was not reliable because Detective Lamb used coercive or suggestive interviewing techniques when she interviewed Aaron. Second, Hanson claims that Detective Lamb deliberately failed to preserve exculpatory evidence vital to the defense when she did not record her interview with Aaron, and, therefore, Hanson asserts the charges against him should be dropped.

Yet, upon consideration of these two arguments, we note, as did the District Court, that Hanson failed to object to Aaron's testimony at the time of trial. Furthermore, as the District Court noted, Hanson himself called Detective Lamb to the witness stand in an effort

5

to discredit her by questioning Detective Lamb about the deficiencies in her interviewing techniques and the absence of any video recording of her interview with Aaron. We agree with the District Court's July 21, 1995 Order wherein the court ruled that both the evidence of Detective Lamb's failure to preserve a record of her interview with Aaron as well as the effect of her interviewing techniques on the reliability of Aaron's testimony were properly considered by the jury. Consequently, Hanson's arguments that the District Court should have held a pretrial hearing to determine Aaron's reliability and that Detective Lamb's failure to videotape her interview with Aaron resulted in suppression of exculpatory evidence in violation of Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, are not properly before us on appeal and we decline to address them.

Third, Hanson argues that the State improperly presented the testimony of Beatrice Rowe (Rowe), Aaron's therapist, on rebuttal. Specifically, Hanson asserts that the defense never questioned Aaron's credibility, and, therefore, Rowe was precluded from testifying about her assessment of Aaron's credibility. While, on appeal, Hanson concedes that he did not properly preserve this issue for appeal, we note that his trial counsel did in fact make an objection to Rowe's rebuttal testimony which the District Court addressed in its July 21, 1995 Order denying Hanson's motion for a new trial. Consequently, we will review the merits of Hanson's argument on this matter.

We agree that an expert witness is generally not allowed to comment on the credibility of an alleged victim. However, an exception to this general rule is made in cases involving

6

sexual abuse of a minor child when that child testifies and the child's credibility has been questioned. State v. Harris (1991), 247 Mont. 405, 410, 808 P.2d 453, 455. In this case, Aaron, who was eight years old at the time of trial, testified in person and Hanson, as a part of his defense strategy, questioned Aaron's credibility to show that Aaron had falsely accused him. In an effort to do this, Hanson elicited testimony from Jack Oakwright, Ph.D., an expert witness. Dr. Oakwright testified that a situation such as the bitter relationship between Emmy and Hanson, which Aaron witnessed, would raise a "red flag" that a child might make a false accusation. Accordingly, we agree with the District Court's July 21, 1995 Order, wherein the court ruled that Rowe's rebuttal testimony concerning Aaron's credibility was proper.

Next, for the first time on appeal, Hanson specifies four errors made by the State which allegedly violated Rule 404(b), M.R.Evid., and the due process clauses of the Montana Constitution and the United States Constitution. Specifically, Hanson asserts that the State introduced testimony and evidence of other acts in violation of Rule 404(b), M.R.Evid.

First, Hanson argues that Emmy's testimony regarding the animosity present in their relationship is irrelevant to the question of whether Hanson abused Aaron. We decline to address this argument because Hanson not only failed to object to this testimony at trial, but, moreover, because Hanson himself elicited similar evidence regarding the bitter relationship between Emmy and himself as a part of his defense strategy to demonstrate that Emmy had a motive to encourage Aaron to make false claims against him regarding sexual abuse.

7

Furthermore, Hanson asserts that the State demonstrated its ability to distinguish between relevant and irrelevant evidence as demonstrated by its objection to Hanson's testimony concerning Emmy's alleged propensity to deceive. Specifically, Hanson explains that he attempted to introduce evidence of a situation when Emmy purportedly called Hanson on three consecutive occasions requesting a ride home thereby causing him to drive repeatedly to a specific location when she was actually home the entire time. Hanson notes that the State objected to this testimony on the basis that this information was irrelevant to the question of whether Aaron was sexually abused. Consequently, Hanson argues that this proves that the only reason the State introduced Emmy's testimony regarding Hanson's actions during the course of their relationship was "to destroy Dale Hanson's reputation and credibility with the jury." We disagree. After reviewing the record, we conclude that the District Court properly struck from the record and admonished the jury to disregard Hanson's testimony concerning this incident because Hanson failed to lay the proper foundation that Aaron was present when Emmy made these alleged phone calls to Hanson. The court properly reasoned that because Aaron did not witness these alleged interactions between Emmy and Hanson, it would not, contrary to Hanson's claim, affect Aaron's propensity to testify falsely against him.

Second, Hanson argues that Detective Lamb's answers to the State's questions concerning previous criminal investigations of Hanson regarding his relationship with Emmy constituted inappropriate comments on Hanson's character. Yet, Hanson failed to object to

this testimony at trial. In fact, as the State points out, it was Hanson who called Detective Lamb to the stand, and, consequently, the State's cross-examination questions pertaining to these investigations merely responded to the testimony that Hanson previously elicited from Detective Lamb during direct examination.

Third, Hanson asserts that the State's cross-examination of him went beyond the scope of direct examination. Hanson contends that the State suggested that he fit the profile of an abuser by asking Hanson questions which implied that Hanson had been sexually abused himself as a child. Additionally, Hanson contends that the State attempted to portray him as a racist by asking questions regarding Hanson's alleged thoughts concerning the connection between Emmy's drinking history and her Native American heritage. Again, Hanson failed to object to the State's cross-examination questions. Moreover, as the State notes, Hanson put before the jury the issue of his relationship with Emmy as a part of his defense strategy, and, therefore, the prosecution properly cross-examined Hanson regarding a number of different issues to further illuminate the nature of his relationship with Emmy.

Fourth, Hanson claims that the State improperly impeached him by introducing hostile notes that Hanson had left on Emmy's car. Hanson argues that the State only introduced these notes to show that Hanson was a "bad man." Yet, upon review of the record, we note that Hanson denied being jealous of Emmy, and, consequently, the hostile notes were properly introduced to impeach Hanson's prior testimony. Furthermore, Hanson was given the opportunity to object to the introduction of these notes when the State made a sidebar

9

offer of proof and Hanson expressly stated he had no objection.

We recognize that under Rule 404(b), M.R.Evid., "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, we again note that Hanson failed to object to any of this evidence during the trial. Moreover, the strategy of the defense was to show that Emmy was vindictive toward Hanson and that this animosity would have caused her to compel Aaron to testify falsely against Hanson, and, consequently, much of the testimony regarding the bitter relationship between Emmy and Hanson was elicited by Hanson himself as a part of his defense strategy. Accordingly, we agree with the State that the evidence to which Hanson now objects on appeal was not evidence of other acts prohibited by Rule 404(b), M.R.Evid.

Finally, Hanson argues that the State made inappropriate remarks in its closing argument. Specifically, Hanson refers to a portion of the State's closing argument in which he claims that the prosecutor inappropriately accused the defense expert, Jack Oakwright, Ph.D., of lying. We note that in one part of the closing argument, the prosecutor said to the jury, "I don't think [Dr. Oakwright] was being honest with you."

We have stated numerous times that "it is highly improper [for an attorney] to characterize either the accused or the witnesses as liars or offer personal opinions as to credibility" because it improperly invades the province of the jury. State v. Stringer (1995), 271 Mont. 367, 380, 897 P.2d 1063, 1071 (citations omitted). However, we will not consider

it reversible error every time an attorney comments on the credibility of a witness. <u>Stringer</u>, 897 P.2d at 1071. As we stated in <u>Stringer</u>, a prosecutor may comment on contradictions and conflicts in the testimony, however, "it [is] the task of the jury to determine which testimony and evidence was more believable." <u>Stringer</u>, 897 P.2d at 1071 (citation omitted). Here, the prosecutor erred by offering a personal opinion as to Dr. Oakwright's credibility, yet Hanson failed to make a contemporaneous objection to the prosecutor's statements. Moreover, based upon our review of the prosecutor's entire closing argument, we conclude that the prosecutor's isolated comment concerning Dr. Oakwright's credibility, in context, is not prejudicial.

In summary, after considering Hanson's arguments and reviewing the record, we agree with the State that much of the error about which Hanson now complains was a part of his own defense strategy to demonstrate that Aaron falsely accused Hanson of sexual abuse due to Emmy's antagonism and ill will toward Hanson. In fact, with the exception of Hanson's objection to Rowe's rebuttal testimony, Hanson not only failed to object to this evidence at trial, but in some instances actually solicited the evidence about which he now complains. Consequently, we conclude that these alleged errors do not rise to the level of a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial system. See <u>Finley</u>, 9 15 P.2d at 2 15. Therefore, we decline to invoke the plain error doctrine to review the issues that Hanson raises for the first time on appeal.

Additionally, Hanson has failed to prove he was prejudiced by either the challenged testimony or the prosecutor's comments during closing argument. Rather, we agree with the State that these alleged errors were either trial strategy, proper rebuttal, or appropriate comments contrasting evidence. Consequently, we conclude that the doctrine of cumulative error also is not applicable in this case. See Campbell, 787 P.2d at 333.

Because we decline to apply the plain error doctrine, and because the doctrine of cumulative error is not applicable, we decline to address Hanson's allegations of error further.

2. **Was Hanson denied his constitutional right to effective assistance of trial counsel?**

Despite Hanson's failure to preserve the previously discussed issues for appeal and despite our refusal to review the merits of his arguments on the basis of plain or cumulative error, he asserts that we should also review these same issues within the context of his ineffective assistance of counsel argument. We evaluate claims of ineffective assistance of counsel using the two-part test as set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. State v. Boyer (1985), 215 Mont. 143, 147, 695 P.2d 829, 83 1. First, a defendant must demonstrate that counsel's performance was so deficient that it fell below the level of competency reasonably demanded of attorneys under the Sixth Amendment. Second, a defendant must demonstrate that counsel's deficient performance was so prejudicial that he was denied a fair trial. Strickland, 466 U.S. at 687. The first prong of the Strickland analysis is based upon an objective standard of reasonableness. Strickland, 466 U.S. at 688. Moreover, "[j]udicial scrutiny of counsel's performance must be highly

12

deferential." Strickland, 466 U.S. at 689. Accordingly, the United States Supreme Court warned against "second-guessing" counsel's assistance:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects ofhindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend. a particular client in the same way.

Strickland, 466 U.S. at 689 (citations omitted).

Hanson first argues that his counsel was ineffective because he did not object to Aaron's testimony and he failed to request a pretrial hearing to assess the reliability of Aaron's testimony to determine its admissibility as required by State v. Michaels (N.J. 1994), 642 A.2d 1372. Yet, as the State points out, Hanson's counsel's trial strategy was to demonstrate that Aaron's testimony was unreliable, which he attempted to do through the testimony of Detective Lamb and Dr. Oakwright. Testing a witness's credibility through the presentation of other witnesses and cross-examination is a traditional and widely accepted method. Furthermore, Hanson's counsel had no duty to rely on Michaels, which is not the law in Montana in any event.

Hanson next argues that his counsel was ineffective because he did not object to Detective Lamb's testimony or the testimony of Beatrice Rowe, Aaron's therapist. Again,

13

as previously discussed, Hanson's counsel called Detective Lamb to the stand and he did so in accordance with his trial strategy to show that Aaron's testimony was unreliable because Detective Lamb used suggestive or coercive interviewing techniques during her interview with Aaron. Furthermore, as previously noted, Hanson's counsel did in fact object to Rowe's rebuttal testimony.

Additionally, Hanson argues that his counsel was ineffective because he made no objection to the attacks on Hanson's character. Again, because the essence of the defense strategy was to demonstrate that Aaron testified falsely against Hanson due to the bitter and vindictive relationship between Emmy and Hanson, Hanson's original counsel made no objection. Finally, Hanson claims that his counsel was ineffective because his counsel failed to object to the prosecutor's closing remarks. We previously concluded that, in context, the prosecutor was merely comparing and contrasting evidence in her closing arguments. While the one reference to Dr. Oakwright's honesty may have been improper, trial counsel's failure to object does not rise to the level of ineffective assistance of counsel.

While Hanson argues that he was denied his constitutional right to effective assistance of counsel, we note that his complaints actually center on his disapproval of his original counsel's trial strategy. Under the circumstances, we will not second guess his counsel's assistance. See Strickland, 466 U.S. at 689. While Hanson's trial counsel's strategy was not successful, we are not prepared to hold that as a matter of law it was ineffective for Sixth Amendment purposes. Counsel's strategy might well have prevailed with some other jury;

14

it simply did not persuade the trial jury in this case. We conclude that Hanson has failed to demonstrate that his trial counsel's performance was so deficient that it fell below the level of competency reasonably demanded of attorneys under the Sixth Amendment. See Strickland, 466 U.S. at 687. Because we reach this conclusion, there is no need to address the prejudice prong of the Strickland test. Accordingly, we hold that Hanson was not denied his constitutional right to effective assistance of counsel.

In summary, we decline to address, under the plain error doctrine or under the cumulative error doctrine, Hanson's arguments that his trial was fundamentally unfair in violation of his rights under the Sixth Amendment of the United States Constitution and under Article II, Section 24 of the Montana Constitution. Additionally, we hold that Hanson was not denied his constitutional right to effective assistance of trial counsel.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

15

July 2, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Wendy Holton
Attorney At Law
7 West Sixth Avenue, Suite 4K
Helena MT 59601

Hon. Joseph P. Mazurek
Elizabeth L. Griffing, Assistant Attorney General
215 North Sanders
Helena MT 59620

Thomas Esch, County Attorney
Dan Wilson, Deputy
800 South Main
Kalispell MT 59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy