No. 97-191

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 1

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DALE LEO GLADUE,

Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office,

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

C. Mark Fowler, Assistant Attorney General, Helena, Montana

Larry D. Epstein, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs: August 20, 1998

Decided: January 5, 1999

Filed:

_____

Clerk

**¶1. Dale Leo Gladue (Gladue) appeals from the judgment entered by the Ninth Judicial District Court, Glacier County, on a jury verdict finding him guilty of felony assault, misdemeanor partner or family member assault and misdemeanor criminal trespass to property. We affirm.**

**¶2. Gladue raises the following issues:**

**¶3. 1. Did the District Court abuse its discretion in denying Gladue's motion for a mistrial based on improper comments by the prosecutor during closing arguments?**

**¶4. 2. Does sufficient evidence support the jury's verdict that Gladue was guilty of criminal trespass to property?**

BACKGROUND

**¶5. In the fall of 1994, Gladue became involved in an intimate relationship with Joyce Nanini (Nanini) and eventually moved into her home in Cut Bank, Montana. The relationship was tempestuous. On October 28, 1995, officers from the Cut Bank Police Department were summoned to Nanini's residence. Upon the officers' arrival, Gladue informed them that Nanini had pointed a pistol at him. Nanini responded that she had done so to protect herself because Gladue had assaulted her and that she had asked Gladue to leave, but he refused to do so. The officers confiscated the pistol and escorted Gladue from the house. Nanini subsequently was charged with felony assault for pointing the pistol at Gladue. Both Nanini's defense counsel and the**

county attorney recommended that Nanini and Gladue stay away from each other during the pendency of the assault proceedings against Nanini, but they continued to see each other. The relationship remained tumultuous, however, with Nanini periodically locking Gladue out of the house or telling him he no longer was welcome to live there.

¶6. During the evening of November 20, 1995, Gladue appeared at Nanini's home. Nanini testified that Gladue was extremely intoxicated and was carrying two beer bottles, one full and one nearly empty. She further testified that Gladue was not living in the house at that time, was not welcome there and had been told by the Glacier County Attorney earlier that day not to have any contact with her. Nanini did not know how Gladue got into her house that evening, but thought he might have picked up one of her children's keys. She testified that, while at her house, Gladue threatened her and tried to hit her. She ran to the back door, yelled for a neighbor to call the police and then told Gladue to leave. Gladue walked out the back door. Once outside, Gladue turned around and threw the full beer bottle at Nanini, hitting her on the left buttock and causing a bruise. He then left the premises.

¶7. The State of Montana (State) subsequently charged Gladue by information with the following offenses, all alleged to have occurred on or around November 20, 1995: Stalking, a felony; Intimidation, a felony; Partner or Family Member Assault, a misdemeanor; two counts of Felony Assault; Burglary, a felony; Tampering with Witnesses and Informants, a felony; and Criminal Trespass to Property, a misdemeanor. The information also charged Gladue with an additional count of Criminal Trespass to Property, a misdemeanor, alleged to have occurred on October 28, 1995. Gladue pleaded not guilty to all counts and trial eventually was set for July 15, 1996. The District Court released Gladue on bond pending trial on the condition, *inter alia*, that he have no contact with Nanini.

¶8. On the morning of trial, the prosecutor requested a continuance--on the basis that contact between Gladue and Nanini had occurred the prior evening in violation of the District Court's order--and the District Court granted the continuance. In addition, a second information was filed charging Gladue with the offenses of Intimidation, a felony, and Tampering with Witnesses and Informants, a felony, both alleged to have occurred on July 14, 1996. Gladue pleaded not guilty to both counts, the two cases were consolidated, and trial was set for September 23, 1996.

¶9. A jury trial was held on September 23, 24 and 25, 1996. At the close of the prosecution's case-in-chief, Gladue moved for a directed verdict on all counts. The District Court granted the motion as to one of the Felony Assault counts and denied it as to the remaining counts. At the close of trial, after the jury retired for its deliberations, Gladue moved for a mistrial, arguing that improper comments by the prosecutor during closing arguments had prejudiced his right to a fair trial. The District Court denied the motion. The jury returned a verdict finding Gladue guilty of Felony Assault, misdemeanor Partner or Family Member Assault and misdemeanor Criminal Trespass to Property, all having occurred on November 20, 1995; the jury acquitted Gladue of all other charges. The District Court sentenced Gladue and entered judgment and Gladue appeals.

## DISCUSSION

¶10. 1. Did the District Court abuse its discretion in denying Gladue's motion for a mistrial based on improper comments by the prosecutor during closing arguments?

¶11. The standard to be applied by a district court in determining whether to grant a defendant's motion for a mistrial is whether the defendant has been denied a fair and impartial trial. State v. Partin (Mont. 1997), 951 P.2d 1002, 1004, 54 St.Rep. 1474, 1476. In turn, we review a district court's grant or denial of a motion for a mistrial to determine whether the court abused its discretion. Partin, 951 P.2d at 1005, 54 St. Rep. at 1476.

¶12. Gladue argued that several comments the prosecutor made in rebuttal closing argument were improper and prejudiced his right to a fair and impartial trial. The District Court concluded that, although the prosecutor's comments may have "pushed the envelope" of impropriety, they were harmless and did not prejudice Gladue's right to a fair and impartial trial. It denied the motion for a mistrial on that basis and Gladue asserts error. In determining whether the District Court abused its discretion in denying Gladue's motion for a mistrial, we address, first, whether the prosecutor's comments were improper and, second, whether any improper comments prejudiced Gladue's right to a fair and impartial trial.

A. Propriety of Prosecutor's Comments in Rebuttal Closing Argument

¶13. In closing argument, Gladue's counsel noted that the felony assault charge

against Nanini which arose out of the October 28, 1995, incident had been dismissed at some point prior to Gladue's July 15, 1996, trial date. In rebuttal closing argument, the prosecutor responded to defense counsel's argument by stating that "[s]ure, the State dropped charges against Joyce Nanini, because witnesses like Sheryl Hetler came forward and confirmed her story." Gladue's counsel objected to this statement on the basis that the prosecutor was arguing facts not in evidence. Before the District Court had an opportunity to rule on the objection, the prosecutor continued his argument as follows:

There was testimony to buttress it. Sheryl Hetler testified on the stand and her statement is an Exhibit, that Dale Gladue confirmed on a phone call that he had been dragging her around by the hair and knocking her around. It's my job to evaluate cases and decide which ones will fly and which ones won't. This one flies, that one didn't. You heard her testify there was no deals made. She was driving me nuts for two years, but at least Kathy Black can now explain it to me, it's that spousal abuse syndrome. She's caught in a real difficult situation. The one person held accountable here is the one that committed the crimes. There are two informations that have been filed and the evidence supports every charge in them, more than most cases we bring.

In addition to reiterating on appeal his contention that the prosecutor improperly argued facts not in evidence, Gladue also asserts that the prosecutor's rebuttal closing argument was improper because the prosecutor vouched for the credibility of Nanini as a witness and offered his opinion on the strength of the case against Gladue. We address Gladue's arguments regarding the propriety of the prosecutor's comments in turn.

## 1. Facts not in evidence

¶14. Gladue argues that the prosecutor's comment that the felony assault charge against Nanini had been dismissed because witnesses had corroborated her account of what occurred on October 28, 1995, was improper because no evidence had been presented as to why the assault charge was dismissed. The record reflects that Nanini testified that the assault charge had been dismissed at some point prior to Gladue's original July 15, 1996, trial date; however, neither she nor any other witness testified regarding why the charge was dismissed. Consequently, Gladue is correct that the prosecutor's statement that the assault charge had been dismissed because witnesses confirmed Nanini's version of the events underlying the charge was not based on evidence of record. Moreover, it is improper for the prosecution to comment on

evidence not of record during closing argument. See State v. Stringer (1995), 271 Mont. 367, 381, 897 P.2d 1063, 1071. We conclude that the prosecutor's comment that the assault charges against Nanini were dismissed because witnesses corroborated her account of what happened was improper.

## 2. Vouching for Nanini's credibility as a witness

¶15. Gladue next argues that the prosecutor's statements that Sheryl Hetler's testimony buttressed Nanini's version of the events of October 28, 1995, and that Kathy Black, the prosecution's expert witness on spousal abuse syndrome, explained Nanini's conduct during the time periods at issue, were improper because they served to bolster Nanini's credibility. We have held that it is improper for the prosecution to offer a personal opinion regarding the credibility of a witness. See, e. g., Stringer, 271 Mont. at 380, 897 P.2d at 1071; State v. Hanson (1997), 283 Mont. 316, 326, 940 P.2d 1166, 1172. However, it is proper for a prosecutor to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may be drawn therefrom. Hanson, 283 Mont. at 326, 940 P.2d at 1172; State v. Ford (1996), 278 Mont. 353, 363, 926 P.2d 245, 250.

## a. Sheryl Hetler's testimony

¶16. Nanini testified that, on October 28, 1995, Gladue entered her home, dragged her from bed by the hair, hit her and chased her around the apartment. Sheryl Hetler (Hetler), a co-worker of Nanini's, testified that she overheard Gladue admit that these events occurred on the telephone. Thus, when the prosecutor stated in rebuttal closing argument that Hetler's testimony buttressed Nanini's, he simply was commenting on the evidence and testimony presented and suggesting to the jury that they could infer that Nanini's version of the events of October 28, 1995, was correct. The prosecutor did not state his personal opinion that Nanini was a credible witness or otherwise vouch for her credibility. We conclude the prosecutor's comment about Hetler's testimony was not improper.

## b. Kathy Black's testimony

¶17. Various witnesses at trial testified that the relationship between Gladue and Nanini was erratic, vacillating between affection and acrimony on a regular basis,

with arguments often leading to physical confrontations. The evidence further established that Nanini often requested law enforcement or the county attorney to tell Gladue to stay away from her and then, shortly thereafter, reestablished her relationship with Gladue. Several of Nanini's friends and co-workers also testified regarding Nanini's tendency to tell Gladue he was not welcome in her life and then accept him back.

¶18. Kathy Black (Black) was called as an expert witness on spousal abuse syndrome during the prosecution's case-in-chief. She testified about the cycle of abuse within a relationship, how that cycle of abuse can evolve into spousal abuse syndrome and how the syndrome manifests itself in the actions of both the abuser and the abused in a relationship. However, Black was not allowed to testify or give an opinion regarding whether Nanini suffered from spousal abuse syndrome.

¶19. In rebuttal closing argument, the prosecutor stated that Black's testimony explained Nanini's inconsistent behavior during the two years prior to the trial. In making this statement, the prosecutor was correlating Black's testimony on spousal abuse syndrome with the evidence regarding the volatile relationship between Nanini and Gladue. To that extent, the prosecutor was merely commenting on the evidence and suggesting to the jury the inferences which could be drawn therefrom--namely, that Nanini suffered from spousal abuse syndrome which, in turn, resulted in her erratic behavior--rather than offering a personal opinion regarding Nanini's credibility. Closing arguments which point out inferences which can be drawn from the evidence presented are not improper. <u>Hanson</u>, 283 Mont. at 326, 940 P.2d at 1172; <u>Ford</u>, 278 Mont. at 363, 926 P.2d at 250. We conclude that the prosecutor's comment that Black's testimony explained Nanini's behavior was not improper.

3. Offering personal opinion on the strength of the case against Gladue and his guilt

¶20. Finally, Gladue asserts that the following statements by the prosecutor were improper:

It's my job to evaluate cases and decide which ones will fly and which ones won't. This one flies . . . . The one person held accountable here is the one that committed the crimes. There are two informations that have been filed and the evidence supports every charge in them, more than most cases we bring.

According to Gladue, these comments constituted improper personal opinions of the prosecutor regarding the strength of the case against Gladue and Gladue's guilt.

**¶21. It is true and, indeed, well settled in Montana that closing arguments which reflect a prosecutor's personal opinion as to the guilt of the defendant are improper. See, e.g., Stringer, 271 Mont. at 380-81, 897 P.2d at 1071; State v. Stewart (1992), 253 Mont. 475, 482-83, 833 P.2d 1085, 1089-90; State v. Campbell (1990), 241 Mont. 323, 328-29, 787 P.2d 329, 332-33; State v. Statczar (1987), 228 Mont. 446, 457, 743 P.2d 606, 613. The reasons underlying this rule are that**

(1) a prosecutor's expression of guilt invades the province of the jury and is an usurpation of its function to declare the guilt or innocence of an accused; (2) the jury may simply adopt the prosecutor's views instead of exercising their own independent judgment as to the conclusions to be drawn from the testimony; and (3) the prosecutor's personal views inject into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and add to the probative force of the testimony adduced at the trial the weight of the prosecutors' personal, professional, or official influence.

Stringer, 271 Mont. at 381, 897 P.2d at 1071-72 (citing Campbell, 241 Mont. at 328-29, 787 P.2d at 332-33). Here, however, the prosecutor's remark that the evidence supported every charge brought against Gladue was simply a comment on the evidence in the case and what that evidence established. Such comments on the evidence are proper. See Campbell, 241 Mont. at 329, 787 P.2d at 333.

**¶22. On the other hand, the prosecutor's argument that it is his job to evaluate cases to determine which ones merit prosecution, that the case against Gladue "flew" and that the evidence supported the charges "more than most cases we bring" clearly constituted the prosecutor's personal opinions regarding the strength of the case against Gladue. Indeed, these remarks are similar to a statement that the prosecution was too busy to prosecute innocent persons or frame people which we previously held improper. See Statczar, 228 Mont. at 457, 743 P.2d at 613. A prosecutor's expression of such views has the potential of causing a jury simply to adopt the prosecutor's opinion as to a defendant's guilt--rather than reaching a verdict based on its independent assessment of the evidence--by adding the prosecutor's professional influence and judgment to the weight of the evidence before the jury. We conclude that these statements by the prosecutor were improper.**

¶23. Finally, Gladue asserts that the prosecutor improperly stated his personal opinion regarding Gladue's guilt in commenting that "[t]he one person held accountable here is the one that committed the crimes." We agree and, in fact, we previously have held that it was improper for a prosecutor to point to the defendant as the one charged with the offenses and state that the defendant "was the one that committed the crimes." Stringer, 271 Mont. at 380-81, 897 P.2d at 1071. The prosecutor's remark in the present case was nearly identical to that held improper in Stringer and, on that basis, we conclude that it was improper.

¶24. Although the State concedes that several of the prosecutor's comments were "troubling," it contends that defense counsel's objection during the rebuttal closing argument attacked the prosecutor's integrity by pointing out the failure to provide a reason for dismissing the assault charge against Nanini and implying that Nanini gave false testimony against Gladue in exchange for the dismissal. The State relies on United States v. Gwaltney (9th Cir. 1986), 790 F.2d 1378, in arguing that the prosecutor's remarks regarding the strength of the case against Gladue and his guilt were in response to defense counsel's implicit attack and were, therefore, justified as an "invited reply."

¶25. We agree with the State's general proposition that a prosecutor's otherwise improper remarks may be held to be appropriate when made in response to an improper comment by defense counsel. See Gwaltney, 790 F.2d at 1385. Indeed, this Court also has recognized that "no error may be claimed where the prosecutor's actions were provoked by defendant's counsel." Campbell, 241 Mont. at 328, 787 P.2d at 332 (citing State v. Close (1981), 191 Mont. 229, 242, 623 P.2d 940, 947). However, we do not agree with the State's assertion that Gladue's counsel implicitly attacked the prosecutor's integrity, thus justifying the prosecutor's remarks as "invited replies."

¶26. The comment on which the State relies as inviting the prosecutor's response regarding the strength of the case against Gladue and his guilt occurred when Gladue's counsel objected to the prosecutor's reference to the reason why the assault charge against Nanini was dismissed. Specifically, Gladue's counsel stated "Your Honor, I brought up the fact that the charges went away. There was never any reason why they went away that the jury heard." This statement merely sets forth the grounds for defense counsel's objection that the prosecutor was arguing facts not in evidence. We are hard pressed to see how this statement implies that the

prosecutor dropped the assault charge against Nanini in exchange for her false testimony at Gladue's trial, as the State contends. What is clear, however, is that defense counsel's comment does not amount to the "considerable and very hard attack on the integrity of the government and the prosecutor" which occurred in Gwaltney. See Gwaltney, 790 F.2d at 1385. We conclude that defense counsel's statement in this regard was not sufficiently objectionable to justify the prosecutor's improper remarks under the "invited reply" principle.

## B. Prejudicial Effect of Improper Argument

¶27. Having concluded that the prosecutor improperly argued facts not in evidence and offered personal opinions as to Gladue's guilt and the strength of the case against him, we turn to a review of the District Court's determination that any improper comments made by the prosecutor did not prejudice Gladue's right to a fair and impartial trial. Prejudice resulting from improper comments by a prosecutor will not be presumed. State v. Stuit (1994), 268 Mont. 176, 185, 885 P.2d 1290, 1296. Rather, a defendant must demonstrate, based on the record, that the prosecutor's improper comments prejudiced his or her right to a fair and impartial trial. Stuit, 268 Mont. at 185, 885 P.2d at 1296; Statczar, 228 Mont. at 457, 743 P.2d at 613. In determining whether prejudice resulted, the improper comments must be viewed in the context of the case in its entirety. See State v. Long (1986), 223 Mont. 502, 512, 726 P.2d 1364, 1371.

¶28. Gladue contends that, because he and Nanini were the only witnesses to the events underlying the charges against him, the jury's verdict necessarily hinged on its credibility assessments of him and Nanini. He argues from that premise that the prosecutor's improper comments prejudiced his right to a fair and impartial trial by adding credence to Nanini's testimony and weight to the evidence against him.

¶29. The jury heard testimony from seventeen witnesses over the course of several days. Law enforcement officers who had responded to calls made after the October and November of 1995 incidents testified regarding what they had observed at the scene and what witnesses told them had occurred, as well as their previous experiences when responding to situations involving Nanini and Gladue. The prosecution also submitted into evidence photographs taken by law enforcement officers of the bruise on Nanini's left buttock allegedly caused by the beer bottle thrown by Gladue on November 20, 1995. Several of Nanini's co-workers testified

regarding the numerous telephone calls from Gladue to Nanini at her workplace, relating that the calls upset Nanini, that they detrimentally affected her job performance and that she had asked Gladue to stop contacting her. Additionally, one co-worker heard Gladue admit to physical abuse of Nanini. Other friends and family members testified about the volatile nature of the relationship between Gladue and Nanini. Thus, while Nanini's testimony and credibility may have been important to the jury's decision, it was only one factor among many to be considered.

¶30. Furthermore, the jury acquitted Gladue of seven of the ten charges upon which it deliberated. Clearly, had the jury found Nanini's testimony to be credible in all respects, it would have returned guilty verdicts on all the charges. Similarly, the seven acquittals belie any notion that the prosecutor's personal opinions that Gladue was guilty and the case against him was strong caused the jury to fail to exercise its independent judgment in evaluating the evidence regarding Gladue's guilt.

¶31. Moreover, the District Court instructed the jury that it was to decide the case based only on the evidence presented, and that the statements of the prosecutor and defense counsel were not evidence. The potential prejudicial effect of improper arguments may be cured when the jury has been admonished not to regard those statements as evidence. State v. Ahto, 1998 MT 200, ¶ 35, 965 P.2d 240, ¶ 35, 55 St. Rep. 851, ¶ 35 (citing Partin, 951 P.2d at 1007, 54 St.Rep. at 1478).

¶32. On the record before us, we conclude that Gladue has not demonstrated that the prosecutor's improper comments in rebuttal closing argument prejudiced his right to a fair and impartial trial. We caution prosecutors, however, that we view improper comments during closing arguments with substantial disfavor and we will not hesitate to remedy such comments by ordering a new trial where any prejudice to a defendant is established. Here, however, we hold that the District Court did not abuse its discretion in denying Gladue's motion for a mistrial based on improper comments by the prosecutor during closing arguments.

¶33. 2. Does sufficient evidence support the jury's verdict that Gladue was guilty of criminal trespass to property?

¶34. We review the sufficiency of the evidence to convict a defendant to determine whether, on viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond

a reasonable doubt. State v. Miller, 1998 MT 177, ¶ 21, 966 P.2d 721, ¶ 21, 55 St.Rep. 719, ¶ 21 (citation omitted).

¶35. The offense of criminal trespass to property is committed when a person knowingly enters or remains unlawfully in an occupied structure. Section 45-6-203(1)(a), MCA. A person enters or remains unlawfully in an occupied structure when he or she is not licensed, invited or privileged to do so. Section 45-6-201(1), MCA.

¶36. The jury found that Gladue committed the offense of criminal trespass to property when he went to Nanini's house on the evening of November 20, 1995, and Gladue challenges the sufficiency of the evidence to support that verdict. Specifically, he argues that the evidence did not establish that he either entered or remained unlawfully in Nanini's house on the evening in question.

¶37. Nanini testified that, although Gladue had lived in her house at various points during their relationship, he was not living there on November 20, 1995, and was not welcome in her house at that time. In addition, she had asked the county attorney to tell Gladue to stay away from her. Nanini further testified that she did not give Gladue permission to enter her house that evening and did not know how he got in.

¶38. The direct evidence of one witness who is entitled to full credit is sufficient proof of any fact. See State v. Flack (1993), 260 Mont. 181, 188, 860 P.2d 89, 94; § 26-1-301, MCA. Consequently, Nanini's testimony was sufficient to establish that Gladue's entry into her home on November 20, 1995, was without license, invitation or privilege and, as a result, was unlawful.

¶39. Notwithstanding Nanini's testimony, Gladue points to other evidence which he asserts establishes that his entry into the house was lawful. For example, Gladue had a key to the house in his possession, there was no restraining order in effect barring him from the premises and one of the investigating officers testified that he thought Gladue was living in the house on November 20, 1995. However, the existence of conflicting evidence does not make the prosecution's evidence supporting the commission of the charged offense insufficient to support a guilty verdict.

¶40. The elements of a charged offense are factual in nature and their existence must be determined by the jury. State v. Sattler, 1998 MT 57, ¶ 55, 956 P.2d 54, ¶ 55, 55 St. Rep. 230, ¶ 55.

It is within the province of the finder of fact to weigh the evidence presented and determine the credibility of witnesses; in the event of conflicting evidence on factual issues, the trier of fact determines which will prevail.

Sattler, ¶ 55. Here, the jury weighed the conflicting evidence, determined the credibility of the witnesses and accepted Nanini's testimony regarding the events in question. We review a jury's verdict to determine whether sufficient evidence supports it, not whether there was evidence to support a different verdict. Sattler, ¶60. We conclude that Nanini's testimony was sufficient to support a determination that Gladue knowingly and unlawfully entered her house on November 20, 1995.

**¶41. Gladue also argues that there was insufficient evidence to support a determination that he remained unlawfully in Nanini's house after being asked to leave. As set forth above, § 45-6-203(1)(a), MCA, provides that the offense of criminal trespass to property is committed when a person knowingly "enters or remains unlawfully in an occupied structure . . . ." The statute is written in the disjunctive and, as a result, the offense may be committed by either entering or remaining unlawfully in an occupied structure. In light of our conclusion that the evidence supported a finding that he entered the house unlawfully, we need not address Gladue's arguments regarding whether he remained in the house unlawfully.**

**¶42. We conclude that, viewing the evidence in the light most favorable to the prosecution, the jury rationally could have found all the essential elements of the offense beyond a reasonable doubt. We hold, therefore, that sufficient evidence supported the jury's verdict that Gladue was guilty of criminal trespass to property.**

**¶43. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JEFFREY M. SHERLOCK

No

Judge of the District Court, sitting in place

of Justice William E. Hunt. Sr.

/S/ DOUGLAS G. HARKIN

Judge of the District Court, sitting in place

of Justice James C. Nelson

Justice Terry N. Trieweiler dissenting.

**¶44. I dissent from the majority's conclusion that the improper comments made by the prosecutor during his closing argument were not prejudicial to the defendant. Our prior case law assumes that when prosecutors argue facts not in evidence and the credibility of a witness, and express a personal opinion about the guilt of the defendant, it is prejudicial to the defendant. In this case, the prosecutor made all three types of comments.**

**¶45. We set forth the law regarding closing argument by the State, and a strong admonition to prosecutors to abide by those parameters, in <u>State v. Stringer</u> (1995), 271 Mont. 367, 897 P.2d 1063. There we stated that:**

This Court has stated repeatedly that it is highly improper to characterize either the accused or the witnesses as liars or offer personal opinions as to credibility. <u>State v. Arlington</u> (1994), 265 Mont. 127, 157, 875 P.2d 307, 325; <u>State v. Rodgers</u> (1993), 257 Mont. 413, 417, 849 P.2d 1028, 1031; <u>State v. Musgrove</u> (1978), 178 Mont. 162, 172, 582 P.2d 1246, 1252-53. In addition, we have recognized that the Rules of Professional Ethics prohibit a lawyer from asserting personal opinions as to the credibility of a witness, or the guilt or innocence of the accused. <u>State v. Stewart</u> (1992), 253 Mont. 475, 482-83, 833 P.2d 1085, 1089-90; <u>Musgrove</u>, 582 P.2d at 1252-53.

. . . .

The reasons why prosecutorial comments about the guilt of an accused are improper have been set forth at length in <u>State v. Campbell</u> (1990), 241 Mont. 323, 328-29, 787 P.2d 329, 332-33. Among the reasons are that: (1) a prosecutor's expression of guilt invades the

province of the jury and is an usurpation of its function to declare the guilt or innocence of an accused; (2) the jury may simply adopt the prosecutor's views instead of exercising their own independent judgment as to the conclusions to be drawn from the testimony; and (3) the prosecutor's personal views inject into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and add to the probative force of the testimony adduced at the trial the weight of the prosecutors' personal, professional, or official influence.

This Court has been unequivocal in its admonitions to prosecutors to stop improper comment and we have made it clear that we will reverse a case where counsel invades the province of the jury by characterizing a party or witness as a liar, or his testimony as lies. Arlington, 875 P.2d at 325. After considering the prosecutor's closing and rebuttal arguments in full, we hold that Stuart was prejudiced by the prosecutor's improper comments.

Stringer, 271 Mont. at 380-81, 897 P.2d at 1071-72.

**¶46. In this case, the prosecutor argued facts to the jury which were not in evidence when: (1) he said that charges had been dropped because Sheryl Hetler confirmed Nanini's story; (2) he said that Kathy Black can now explain to him that spousal abuse syndrome is the reason for Nanini's inconsistent conduct; and (3) the evidence in this case is stronger than in most cases where charges are filed.**

**¶47. The prosecutor improperly commented on the credibility of the State's chief witness, Nanini, when he inferred that her testimony was consistent with what Kathy Black has now explained to him, in spite of the fact that Kathy Black was not allowed to express an opinion that Nanini suffered from spousal abuse syndrome. Finally, the prosecutor improperly expressed his personal opinion about Gladue's guilt when he stated that: (1) "It's my job to evaluate cases and decide which ones fly and which ones won't. This one flies . . . ."; (2) "The one person held accountable here is the one that committed the crimes."; and (3) "There are two informations that have been filed and the evidence supports every charge in them, more than in most cases we bring."**

**¶48. If the combination of the prosecutor's comments in this case were not prejudicial, then the bar for proving prejudice has been raised to an impossible level. It is hard to imagine what kind of commentary beyond the record, or what kind of**

personal opinion about the defendant's guilt, would be prejudicial.

¶49. In <u>Stringer</u>, we appropriately reaffirmed our strong and consistent admonition to prosecutors to avoid making comments to jurors not supported by the record and to avoid invading the province of the jury by expressing personal opinions about the guilt of the defendant. We reinforced that admonition by concluding that prejudice had been established and ordered that the defendant be retried. With this opinion, we render that strong admonishment a hollow threat and encourage reckless conduct by counsel, with our only guidance being that we will consider improper argument on a case-by-case basis, depending on how it makes us feel on any given day.

¶50. For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court and remand for a new trial.

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart joins in the foregoing dissenting opinion.

/S/ W. WILLIAM LEAPHART